MATTER OF MALONE

In Deportation Proceedings

A-12044077

*Decided by Board July 15, 1966*

Collateral attack on an order of deportation executed in 1953 is warranted when that order resulted in a gross miscarriage of justice because, upon the basis of the then existing judicial and administrative decisions, the finding of deportability was not in accord with the law as interpreted at that time.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—Section 212(a)(17) [8 U.S.C. 1182(a)(17)] and section 242(f) [8 U.S.C. 1252(f)] —Entry after deportation as prostitute.

The special inquiry officer certified his order terminating proceedings.

In issue is the propriety of respondent's deportation in 1953 and the effect of subsequent reentries without permission to reapply.

The facts have been fully stated in previous orders. Briefly, respondent, a divorced female, a native and citizen of Canada, was admitted to the United States in 1925 for permanent residence with her parents and other members of her family. On December 7, 1953 she was deported to Canada on the charge that she had engaged in prostitution after entry (section 241(a)(12) of the Act, 8 U.S.C. 1251 (a)(12)) (administrative appeal was filed, but later withdrawn). At that deportation hearing, the respondent consistently denied that she had ever committed an act of prostitution. The evidence presented to sustain the charge was a record of conviction on a plea of guilty to a charge of soliciting and offering to commit prostitution in New Orleans in 1953. There was no independent evidence to support the record of conviction. Respondent explained the conviction as arising out of an incident in which an individual forced himself upon her and when the police came upon the scene accused her of offering to commit prostitution.

Respondent never obtained the consent of the Attorney General to her applying for admission after deportation (section 212(a)(17) of the Act, 8 U.S.C. 1182(a)(17)). However, she reentered the United States in 1958 or 1959. On April 21, 1964 she was deported for having reentered without the Attorney General's consent to apply. She again entered the United States on November 24, 1964. In March 1966 the Service started the instant proceedings under section 242(f) of the Act (8 U.S.C. 1252(f)) to deport respondent on the basis of the 1953 order of deportation, and because of the fact she had entered without the Attorney General's consent. The special inquiry officer ruled that the 1953 deportation was a gross miscarriage of justice, that it must be considered a nullity, and that it, therefore could not serve as a basis for deporting the respondent. The special inquiry officer ruled as he did because of his belief that the charge should not have been sustained at the original hearing for at that time proof of even one act of prostitution would not have required a finding of deportability (*U.S. ex rel. Mittler* v. *Curran*, 8 F.2d 355, 2d Cir., 1925; see *Mirabal-Balon* v. *Esperdy*, 188 F. Supp. 317, S.D.N.Y., 1960; *Matter of T—*, 6 I. & N. Dec. 474) and at that time the Service had not even presented proof of one act of prostitution: the controverted proof merely showed an offer to commit prostitution.

We concur in the special inquiry officer's well-reasoned conclusion. Respondent's deportation in 1953 on the charge that she had been a prostitute is based upon a record which plainly reveals that the Service had failed to sustain its burden of proof. There was a gross miscarriage of justice; the error should not be perpetuated (*McLeod* v. *Peterson*, 283 F.2d 180 (3rd Cir., 1960); accord, *United States* v. *Bowles*, 331 F.2d 742 (3rd Cir., 1964); see *Matter of S—*, 3 I. & N. Dec. 83. But see *De Souza* v. *Barber*, 263 F.2d 470 (9th Cir., 1959), cert. den. 359 U.S. 989).

The Service pointing to judicial decisions holding that a collateral attack on a prior deportation proceeding cannot be made unless there was a lack of due process or a jurisdictional issue, contends that neither of these elements is present here. The short answer is that the special inquiry officer relied upon judicial and administrative authority permitting collateral attack where there has been a gross miscarriage of justice.

The Service contends that the issue of deportability should not be retried so many years after it was decided. We are neither reevaluating evidence nor applying an interpretation of law made subsequent to the time of the original deportation decision. We merely state that on the basis of judicial and administrative decisions exist-

ing at the time of the original proceeding, no order of deportation should have been entered. The finding of deportability in 1953 was not in accord with the law as interpreted at that time.

Without citation of authority, the Service contends that the Board is interfering with the operation of criminal statutes (relating to the reentry of deported aliens) by permitting a collateral attack on the prior deportation proceeding. The contention cannot stand in view of the judicial authority which permits collateral attack under certain circumstances.

The Service contends that the special inquiry officer acted in the belief that proof of even one act of prostitution *could not* have served as the basis for deportation in 1953, whereas the law then was that such proof *might* be sufficient. The special inquiry officer's statement must be taken as applied to the facts before him where there was no proof that the respondent had engaged in prostitution.

The special inquiry officer properly waived the technical grounds of deportation which might arise from the fact that the respondent reentered the United States without proper documents after her deportation. In addition, we shall give the respondent a *nunc pro tunc* grant of permission to reapply in connection with each of these reentries to eliminate whatever technical objection may arise from the fact that she reentered without the prior consent of the Attorney General after having been deported.

ORDER: It is ordered that respondent be granted permission to reapply *nunc pro tunc* in connection with each entry made after her deportation in 1953.

*It is further ordered* that no change be made in the order of the special inquiry officer.