# In re Gary Fitzroy BECKFORD, Respondent

## File A31 288 979 - Hartford

*Decided January 19, 2000*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Where an alien has filed an untimely motion to reopen alleging that the Immigration and Naturalization Service failed to prove the alien's removability, the burden of proof no longer lies with the Service to establish removability, but shifts to the alien to demonstrate that an exceptional situation exists that warrants reopening by the Board of Immigration Appeals on its own motion.

(2) Where an alien seeking to reopen removal proceedings failed to demonstrate a substantial likelihood that the result in his case would be changed if the proceedings were reopened, by showing that he was not, in fact, removable, he failed to present an exceptional situation to warrant a grant of his untimely motion.

Michael J. Boyle, Esquire, New Haven, Connecticut, for respondent

Robert K. Bingham, Special Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; HEIL-MAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, GUENDELSBERGER, JONES, GRANT, MOSCATO, and MILLER, Board Members. Dissenting Opinions: SCHMIDT, Chairman; joined by VACCA, Board Member; ROSENBERG, Board Member.

HURWITZ, Board Member:

This case was before us on December 29, 1998, when we dismissed an appeal taken from an Immigration Judge's decision finding the respondent removable as charged and ineligible for relief from removal. On July 2, 1999, the respondent filed a motion to reopen. This motion is untimely and will be denied.

The respondent is a native and citizen of Jamaica who entered the United States in 1972 as a lawful permanent resident. A Notice to Appear (Form I-862) was issued by the Immigration and Naturalization Service on April 22, 1997, charging him with removability as an aggravated felon

under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996). This charge was based on a July 8, 1996, conviction in the State of Connecticut. The record before us contains an "Information" regarding the respondent's conviction, which reveals that the respondent was convicted, upon a plea of guilty, of "Poss w/ intent to sell" in violation of section 21a-277(a) of the Connecticut General Statutes. That statutory provision relates to "any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance." Conn. Gen. Stat. Ann. § 21a-277(a) (West 1995). The respondent was sentenced to 27 months' confinement for his offense.

Removal proceedings were commenced on October 28, 1997, but were continued to enable the respondent to obtain counsel. At the continued hearing, the respondent again appeared without counsel. The Immigration Judge questioned him regarding the allegations in the Notice to Appear, including the allegation that the respondent was, "on July 8, 1996, convicted in the Superior Court at New Haven, CT for the offense of possession of narcotics with intent to sell, in violation of Section 21a-277(a) of the Connecticut General Statutes." The respondent admitted that allegation. The respondent then stated that he had obtained an attorney. The Immigration Judge noted that no attorney had filed a notice of appearance, but he continued the hearing to a later date.

The proceedings went forward and were completed on March 9, 1998. On that date, the Immigration Judge asked the respondent whether he had been convicted on July 8, 1996, of "possession of narcotics with intent to sell." The respondent again stated that he had been so convicted. The Immigration Judge then entered an order finding the respondent removable and ordering his removal to Jamaica. A timely appeal was filed, which argued that the Immigration Judge abused his discretion and did not take into account the respondent's family in the United States, his military service in the United States Marines, and the nature of the charge against him. The respondent also alleged that he believed his state court conviction "was improper." As noted above, we dismissed that appeal on December 29, 1998.

More than 6 months after our decision, the respondent filed his motion to reopen. This motion made a number of claims regarding ineffective assistance of counsel and the alleged inadequacy of proof of the respondent's removability.

The respondent's motion to reopen is clearly untimely. Under the regulations, a motion to reopen must be filed "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 3.2(c)(2) (1999). In our precedent decision in *Matter of J-J-,* 21 I&N Dec. 976 (BIA 1997), we emphasized the importance of the time limits on motions to reopen, noting the need to discourage dilatory motions and Congress' mandate that we issue regulations to do so. We did recognize that we retained "limited discre-

tionary powers" to reopen or reconsider cases on our own motion. *Id.* at 984. However, we cautioned that such powers should be exercised only in "exceptional situations." *Id.* We further indicated that it is the respondent's burden to demonstrate that such a situation exists. *Id.* at 984-85. An exceptional situation has not been shown in this case.

The respondent admitted at his removal hearing that he was convicted of a narcotics offense. This admission came when the Immigration Judge had the respondent plead to the allegations contained in the Notice to Appear, as required by the regulations. *See* 8 C.F.R. § 240.10(c) (1998). In fact, twice during the proceedings, at separate occasions on different days, the respondent admitted to having a narcotics conviction. These admissions, together with the record of conviction, adequately establish the respondent's removability.

Moreover, and more importantly, the issue before us in this untimely motion is not, as framed by the respondent, whether the Service has met its burden of proof to establish that the respondent is removable as an aggravated felon. It is whether the respondent has met his burden of showing an exceptional situation that warrants our considering this untimely motion.

The respondent has failed to overcome the untimeliness of his motion by demonstrating that an exceptional situation exists. In his brief in support of the motion to reopen, he makes detailed legal arguments explaining why he believes the Service did not meet its burden of proof at the hearing. These arguments miss the point that the issue now before us is not whether the Service met its burden of proof at the hearing. In fact, at no point in his motion papers does the respondent even recognize that his motion is untimely, and no effort has been made to overcome the untimeliness problem.

The current posture of this case is critical to our decision. Were this case now before us on direct appeal, we might be inclined to remand for a further hearing. However, the fact that this is an untimely motion necessarily changes our point of view. A criminal defendant is initially the beneficiary of the rule that the government must prove his guilt beyond a reasonable doubt. However, once having been found guilty, the defendant bears the burden of proof if he wishes to attack that finding. *See generally Taylor v. Illinois,* 484 U.S. 400, 414 (1988). Similarly, the Service initially bears the burden of proof in a removal proceeding, but once an alien is found removable (and that finding is upheld on appeal, if an appeal is taken), the burden shifts to the alien who wishes to attack that finding. We note that, even where a motion to reopen is not untimely, the motion will not be granted unless there is a reasonable likelihood of success upon reopening. *See generally Matter of L-O-G-,* 21 I&N Dec. 413 (BIA 1996); *see also INS v. Doherty,* 502 U.S. 314 (1992) (indicating that motions to reopen in immigration proceedings are disfavored); *INS v. Abudu*, 485 U.S. 94 (1988) (same). This is particularly so when the motion seeking further review of the finding is untimely.

The respondent in this case has not even attempted to claim, much less established, that he is not, in fact, removable. He has stated that the Service failed to prove that he was convicted of an offense involving narcotics or a controlled substance that would render him removable as an aggravated felon. However, he has not alleged, much less proved, that the controlled substance involved in his offense was one that would *not* render him removable. He has not raised an actual defense to the charge against him. He has suggested a potential theory under which he conceivably might not be removable as an aggravated felon. However, he has not taken the next, and critical, step of showing how the theory applies to his case. He has not, for example, produced any part of the record of conviction that might show what substance was involved in his conviction, and why that substance would not render him removable as an aggravated felon. He has not even claimed in his motion, by affidavit or otherwise, that his offense involved such a substance. At this point, we require such an affirmative showing from the respondent.

In fact, rather than stating what substance was involved in his offense and arguing that substance would not render him removable as charged, the respondent submitted an affidavit in support of his motion that further supports the finding of removability. In a sworn statement dated May 27, 1999, the respondent states that he was charged in Connecticut "with possession with intent to sell narcotics." Thus, the respondent's own motion papers would actually support a finding of removability. He has not attempted to prove that he is not actually removable as charged because he cannot make such a showing.

To warrant our taking this untimely motion sua sponte, the respondent needed to show the existence of an exceptional situation. Notwithstanding any possible problems with the Immigration Judge's handling of the hearing or with the actions (or inaction) of previous counsel, the respondent, at a minimum, needed to demonstrate a substantial likelihood that the result in his case would be changed if reopening is granted. The respondent has made no such showing. His motion must therefore be denied as untimely.

In the dissenting opinions, Chairman Schmidt and Board Member Rosenberg urge us to accept this untimely motion by arguing that failure to do so would result in a miscarriage of justice. We need not decide today whether this may, under some circumstances, be a proper basis for accepting an untimely motion, because the respondent has not shown that a miscarriage of justice will result if his motion is denied. Although the respondent has filed briefs and considerable documentation in support of his motion, to date he has not filed anything that would suggest that his conviction does not, in fact, constitute an aggravated felony conviction that renders him removable.

In her dissent, Board Member Rosenberg cites *Matter of Roman*, 19 I&N Dec. 855 (BIA 1988), and *Matter of Malone*, 11 I&N Dec. 730 (BIA

1966). Such references are unavailing. In *Matter of Roman*, we stated that an alien may collaterally attack a final order of deportation in a subsequent deportation hearing, but "only if she can show that the prior order resulted in a gross miscarriage of justice." *Id.* at 856-57. No such showing was made in that case because the respondent had admitted the allegations and conceded deportability at the previous hearing.

In *Matter of Malone, supra*, we allowed a collateral attack on an order of deportation because we found that the earlier finding of deportability was "not in accord with the law as interpreted at that time." *Id.* at 732. We concluded that to allow such a finding to stand would result in a gross miscarriage of justice. Here, by contrast, the respondent has presented nothing to persuade us that to remove him from this country would be in violation of law or otherwise a gross miscarriage of justice. To the contrary, the respondent here has conceded the allegations in the Notice to Appear and has provided nothing to suggest that he is not actually removable as charged.

The Rosenberg dissent also cites to our decisions in *Matter of Pichardo*, 21 I&N Dec. 330 (BIA 1996), and *Matter of Teixeira*, 21 I&N Dec. 316 (BIA 1996). In those cases, we held that where an alien has been convicted under a statute that encompasses both crimes that constitute firearms offenses and those that do not, we will not rely on the alien's testimony to determine whether his offense actually involved a firearm, but will look to the record of conviction to make that determination. Reliance on these cases suffers from the same infirmity as the respondent's other arguments: it does not recognize the current posture of the case and the unassailable fact that the burden now rests with the respondent. We note further that those cases do not establish that an alien's pleadings to factual allegations in the charging document may be insufficient to reflect the portion of a divisible statute under which he was convicted. Those decisions merely indicate that separate testimony, not pleadings, is not sufficient to prove the nature of the conviction.

Contrary to the assertion in the Rosenberg dissent, the respondent's admissions to the factual allegations in the Notice to Appear are not contradicted by the record of conviction presented by the Service. The record of conviction refers to a Connecticut statute and that statute, in turn, refers to narcotics. While the statute also encompasses controlled substances other than narcotics, it clearly does include narcotic drugs, and the respondent admitted to having a conviction involving narcotics. This admission is, in fact, fully consistent with the record of conviction.

The Rosenberg dissent states that we have ignored the substantive issues raised in the respondent's motion and instead have denied the motion "on purely administrative grounds under the regulations." *Matter of Beckford,* 22 I&N Dec. 1216, at 1223 (BIA 2000) (Rosenberg, dissenting). We do not view the regulations that set forth strict time and number limits on motions as merely "administrative." The regulations at issue were prom-

ulgated by the Attorney General, and we are required to give them the full force and effect of law. *See* section 103(a) of the Act, 8 U.S.C. § 1103(a) (Supp. II 1996); *Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989), and cases cited therein. Moreover, the time and number restrictions on motions were clearly mandated by Congress and were promulgated in direct response to Congress' command. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 545(d), 104 Stat. 4978, 5066; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18,900 (1996); *see also Matter of G-D-,* 22 I&N Dec. 1132 (BIA 1999).

When Congress directed the Attorney General to promulgate regulations limiting motions to reopen and reconsider, it clearly sought to (1) limit the ability of aliens to file motions, and (2) bring finality to immigration proceedings. Board Member Rosenberg's view of the Attorney General's regulations defeats these purposes and would be contrary to the congressional mandate.

The respondent's arguments regarding ineffective assistance of counsel ignore the fact that this is an untimely motion. Had the respondent raised these issues within the time limits for motions, we might have considered granting the motion, though it would still have suffered from the infirmity that the respondent has failed to offer anything to show that he is not, in fact, removable. At this juncture, however, and for the reasons discussed above, we see no basis for granting this untimely motion because of the problems with the respondent's prior counsel.

We have noted the parties' arguments regarding *Matter of Mena*, 17 I&N Dec. 38 (BIA 1979), and *Matter of Paulus*, 11 I&N Dec. 274 (BIA 1965). We asked the parties to brief their positions on these cases when we granted the respondent's request for a stay of removal. We find that these cases are also distinguishable from the present case, because both involved appeals on the merits where the burden of proof was on the Service.

For the foregoing reasons, the motion to reopen will be denied.

**ORDER:** The motion to reopen is denied.

*DISSENTING OPINION:* Paul W. Schmidt, Chairman; in which Fred W. Vacca, Board Member, joined

I respectfully dissent.

Removal of the respondent under these circumstances would be a miscarriage of justice. I therefore find this to be an exceptional situation warranting reopening on our own motion under *Matter of J-J-,* 21 I&N Dec. 976 (BIA 1997).

The respondent's prior attorney failed to appear at the removal proceeding before the Immigration Judge. He further failed to represent the respondent on appeal and appears to have misrepresented his actions to the respondent. The respondent filed a claim of ineffective assistance of coun-

sel that complies with our decision in *Matter of Lozada*, 19 I&N Dec. 638 (BIA), *aff'd*, 857 F.2d 10 (1st Cir. 1988).

At the removal hearing, the Immigration and Naturalization Service did not establish that the respondent's conviction under Connecticut law involved a substance that would be considered a controlled substance under federal law. In fact, the Service never established what particular substance was involved in the Connecticut conviction.

The unrepresented respondent "admitted" to the Immigration Judge that he had been convicted of "possession of narcotics with intent to sell." Contrary to the majority's suggestion, that simple statement by an unrepresented respondent cannot fairly be treated as a *knowing and intelligent* admission that he was convicted of possession with intent to sell a narcotic drug under Connecticut law that also would be considered a controlled substance under federal law.

The respondent's removability as an aggravated felon has not been established by the statutorily required clear and convincing evidence. It *is* clear, however, that the respondent was prejudiced by the failure of his attorney to represent him at the removal hearing or on appeal.

Moreover, the United States Court of Appeals for the Second Circuit, the jurisdiction in which this case arises, has found the violation of a fundamental constitutional or statutory right to be inherently prejudicial. *See Waldron v. INS,* 17 F.3d 511 (2d Cir. 1993), *cert. denied*, 513 U.S. 1014 (1994); *cf. Matter of Hernandez*, 21 I&N Dec. 224, 227 (BIA 1996) (acknowledging *Waldron*, but finding that an explanation of an Order to Show Cause by the Service at the time of personal service does not implicate a fundamental right). The right to effective representation by one's retained attorney is such a fundamental right. *See Montilla v. INS*, 926 F.2d 162 (2d Cir. 1991) (holding that a remand was required where regulations regarding an alien's right to counsel in deportation proceedings were violated).

The respondent is undoubtedly a criminal. It is also uncontested that he has been a lawful permanent resident of the United States for 27 years, has served in the United States Marine Corps, has two United States citizen children, and also has parents and siblings who are United States citizens. Thus, his stake in this country is very substantial. I would not remove him unless satisfied that the charge of deportability has been properly proved by the Service following a fundamentally fair hearing.

For the foregoing reasons, I find that the respondent's removal under current circumstances would be a miscarriage of justice. I would therefore grant his motion to reopen under *Matter of J-J-, supra*, and remand the case to the Immigration Judge so that the respondent's removability can be fairly and properly determined. Consequently, I respectfully dissent.

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully dissent.

The record reflects an unfair hearing before the Immigration Judge, an unfair disposition of the charges, and an unfair review of the Immigration Judge's decision on appeal before the Board. This is due in part to certain errors made by the Immigration Judge below, and due in part to the absolute failure of the respondent's original counsel to appear and properly represent him. Nevertheless, the majority invokes our restricted administrative discretion under the regulations governing motions to reopen not filed within 90 days as its basis for declining to right these wrongs.

We should not be blinded by our commitment to the regulatory time and number limits on motions to reopen removal proceedings. *See* 8 C.F.R. § 3.2(c) (1999). In refusing to remand the respondent's case to the Immigration Judge to allow him to be represented by counsel in a fair hearing before being ordered removed from the United States, the majority has lost sight of the larger picture. The majority closes its eyes to three critical points:

> 1. A lawful permanent resident, who has lived in the United States for 27 years and has other compelling equities, is about to be removed with no hope of return to the United States.
> 2. The Immigration and Naturalization Service was effectively relieved, in the hearing below, of its burden of proving that the respondent was convicted, as it had alleged, and removable, as it had charged, under the statute.
> 3. The respondent had a valid challenge to the charges levied by the Service and to the ruling of the Immigration Judge, but was denied effective counsel at his removal hearing and on appeal to the Board.

As a result of the majority's refusal to remand this case, the possibility of accommodating due process or achieving justice in removal proceedings simply falls by the wayside. It becomes nothing more than an ideal that looks good on paper and means little in practice. I cannot join the majority in elevating the regulations and limiting our intervention, rather than reopening, when doing so could achieve a just result. Therefore, I dissent.

## I. SIGNIFICANCE OF THE UNDERLYING FACTS AND PROCEEDINGS

The respondent is a former United States Marine who has lived lawfully in the United States for 27 years. He is the parent of two United States citizen children. Through no fault of his own, he was unrepresented at the removal hearing below and on appeal and is subject to a final order of removal dated December 29, 1998.

On July 23, 1999, we granted a temporary stay of execution of the removal order and asked the Service to respond to the respondent's argu-

ment that the state statute under which he was convicted is divisible, and that our precedent decisions in *Matter of Mena*, 17 I&N Dec. 38 (BIA 1979), and *Matter of Paulus*, 11 I&N Dec. 274 (BIA 1965), control the disposition of his case. The majority essentially obviates that order, ignores the substantive issues before us, and denies the motion on purely administrative grounds under the regulations.

## A. Right to Counsel

The respondent is the unfortunate subject of a continued removal hearing, in which the Immigration Judge disregarded his earlier order issued October 28, 1997, continuing the case to allow the respondent to obtain counsel. *See* 8 C.F.R. §§ 240.6, 240.10(a)(1) (1998); *see also* 8 C.F.R. §§ 3.16; 3.29 (1998) (allowing representation by counsel at the respondent's own expense and authorizing a continuance for good cause shown). Ostensibly, the purpose of advising a respondent that he may be represented by counsel and continuing proceedings to allow him to obtain counsel is to afford a respondent the opportunity to be represented in proceedings in which his removal may be ordered. However, at the reconvened hearing, the Immigration Judge did not inquire first whether the respondent had retained counsel to represent him in the proceedings. He simply went ahead and questioned the unrepresented respondent regarding the allegations made by the Service, finding the respondent to be removable based on his admission to the allegations in the Notice to Appear (Form I-862) prepared by the Service.

In fact, the respondent had retained counsel and, through his family, had paid the attorney and given him documentation relevant to his case. However, the date of the continued hearing originally set by the Immigration Judge was changed because of circumstances outside the control of the respondent, and the attorney who had been retained by the respondent failed to appear for the rescheduled hearing. The respondent insisted that he had expected to be represented. As a result, even though the Immigration Judge already had questioned the respondent and secured his admission to the allegations in the Notice to Appear, the hearing was continued.

At a subsequent hearing, the respondent's attorney still failed to appear. Ignoring the fact that the respondent's prior admissions were made in the absence of counsel, and citing the fact that no attorney had "filed anything," the Immigration Judge had the respondent affirm the prior pleadings and issued a summary order of removal.

These fundamental errors—questioning the respondent and taking his pleadings to the allegations in the Notice to Appear when the respondent had retained counsel, but counsel was not available to represent him—constitute significant due process violations that tainted the respondent's

removal hearing and rendered it fundamentally unfair. A removal hearing must be conducted in a manner that satisfies principles of fundamental fairness. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982); *Harisiades v. Shaughnessy,* 342 U.S. 580 (1952); *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (emphasizing that deportation "visits a great hardship on the individual" and recognizing that "[m]eticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness"); *see also Rabiu v. INS,* 41 F.3d 879 (2d Cir. 1994).

The regulation requiring the Immigration Judge to advise a respondent of his right to be represented by counsel at his or her own expense, and the Immigration Judge's order continuing the proceedings to allow the respondent to obtain counsel, each reflect administrative mechanisms that protect fundamental rights guaranteed by the United States Constitution. *See Montilla v. INS*, 926 F.2d 162 (2d Cir. 1991). The instant case does not present a situation in which the respondent had been granted more than one continuance to obtain counsel and the Immigration Judge denied a further continuance. *Cf.* 8 C.F.R. § 3.16. Rather, it reflects an error on the part of the Immigration Judge, who required the respondent to plead to the allegations lodged by the Service, without ever inquiring whether the respondent had obtained representation or was represented by counsel, and in violation of the right to be represented by counsel.

Denial of the right to be represented by counsel calls into question the fairness of the proceedings, and deviation from these fundamental rights is considered inherently prejudicial in the circuit in which this motion arises. *See Waldron v. INS, 17 F.3d 511, 518 (2d Cir. 1993), cert. denied*, 513 U.S. 1014 (1994). A decision rendered in the course of such proceedings cannot support an order of removal.

## B. Offense Underlying the Conviction

Complicating this questionable order of events in the hearing below is a criminal "Information" issued by the Superior Court of Connecticut, which was submitted by the Service in the initial hearing and eventually made part of the record. This document indicates that on October 24, 1995, the respondent pled guilty to and was convicted of a violation of Connecticut state law—"Poss. w/ intent to sell" under "§ 21a-2779 [sic]" of the Connecticut General Statutes. Apparently, as a result of this conviction, the Service alleged and charged in the Notice to Appear issued on April 22, 1997, that he was removable from the United States because he was "on July 8 1996, convicted . . . for the offense of possession of narcotics with intent to sell."

The regulations require the Immigration Judge to read the factual allegations and the charges in the Notice to Appear to the respondent and to

explain them in nontechnical language. 8 C.F.R. § 240.10(a)(6) (1999). Although the Immigration Judge broadly summarized the allegations at the initial hearing, he glossed over the distinction between the allegation in the Notice to Appear that narcotics were involved and the actual language on the respondent's conviction record, which indicates only that the offense involved a controlled substance.

This is a distinction with an express difference. To constitute a controlled substance conviction that triggers removability, a conviction must be for an offense that is analogous to a federal offense, i.e., the controlled substance must be included in section 102 of the Controlled Substances Act. *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992); *see also Matter of Paulus, supra* (requiring specification of the particular controlled substance offense alleged to form the basis of deportability). The Connecticut statute is broader, listing controlled substances not included on the federal list.

The court documents make clear that the respondent was not convicted of possession of narcotics with intent to sell, as charged by the Service, but that he was convicted of "Poss. w/ intent to sell." The respondent's admission—consisting of a "yes" to the Immigration Judge's question, "Is that all correct?" (referring to the Service's allegations in the Notice to Appear)—is contradicted by the record of conviction submitted by the Service itself.

In addition, it should be obvious that, according to the documents submitted by the Service, the respondent was convicted on October 24, 1995, and not on July 8, 1996, as charged by the Service. Rather, the conviction document, on its face, reflects that July 8, 1996, was actually the date sentence was imposed, not the date the respondent was convicted.

Consequently, the respondent's agreement that the allegations in the Notice to Appear were correct cannot be deemed to establish that he was convicted of a controlled substance offense within the meaning of section 101(a)(43)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B) (Supp. II 1996). The evidence in the record is neither clear nor convincing. It is unreasonable to hold that the respondent's "yes" satisfies the burden of proof ordinarily placed on the Service by the express terms of the statute, when the record contains evidence that is inconsistent with the allegation admitted by the respondent. *See* section 240(c)(3)(A) of the Act, 8 U.S.C. § 1229a(c)(3)(A) (Supp. II 1996); *see also Matter of Pichardo,* 21 I&N Dec. 330 (BIA 1996) (holding that a respondent's testimony concerning his violation of the law is not admissible and does not relieve the Service of its burden of proving that the respondent is subject to deportation or removal based on a particular conviction); *Matter of Teixeira,* 21 I&N Dec. 316 (BIA 1996).

The statute requires that substantial evidence must exist to support a finding of removability. *See* section 240(c)(3)(A) of the Act ("No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."). None exists in the instant case. Although an

Immigration Judge's determination that removability has been established may be based on the admissions of the respondent, the Immigration Judge must be "satisfied" that no "issues of law or fact remain." 8 C.F.R. § 240.10(c). This regulation offends the statute if it is used as a quick and easy way for an Immigration Judge to enter a removal order, as obviously happened here.

At a minimum, there are evidentiary conflicts with regard to the substantive offense of which the respondent was convicted, according to the actual conviction documents, and the date on which he was convicted. The regulations permitting an Immigration Judge to rely on a respondent's admission must be tempered by recognition of the statutory burden of proof assigned to the Service by Congress. Given the disparities in the record, the Immigration Judge's ruling, which was based on the respondent's admission alone, should not have been sustained. Even at this late date, the Board is empowered to intervene to see that justice is done in such a situation, and we should intercede to prevent the respondent from being removed on the basis of his admission to an allegation that is not supported by the underlying record.

## II. APPLICABLE STANDARDS FOR REOPENING

So intent is the majority on limiting any exceptions to the restriction on untimely motions that its application of the rule swallows the exception. *Cf.* 8 C.F.R. § 3.2(a) (authorizing the Board to reopen a case at any time); *cf. also Matter of G-D-*, 22 I&N Dec. 1132 (BIA 1999) (Rosenberg, dissenting); *Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997) (Rosenberg, dissenting). However, the interests of justice—put off by the majority for another day—warrant our adjudicating the respondent's motion on its merits and remanding his case to the Immigration Judge for a fair hearing.

The alternative—removal of a long-term lawful permanent resident on a record in which the Service has not met its burden of establishing removability by clear and convincing evidence—would result in a gross miscarriage of justice. *See Matter of Roman,* 19 I&N Dec. 855 (BIA 1988) (recognizing that a final order of deportation or exclusion may be attacked upon a showing that the prior order resulted in a gross miscarriage of justice); *Matter of Malone*, 11 I&N Dec. 730 (BIA 1966) (finding that the validity of the deportation order can and must be examined where the record reveals that the Service failed to sustain its burden of proof). The circumstances presented by the respondent's motion to reopen should be considered but one situation in which the Board, in the exercise of its discretion, may elect to assert jurisdiction over a motion that does not comport with the regulations. *See Matter of J-J-, supra.*

### A. Ineffective Assistance of Counsel as a Basis
### To Reopen Proceedings

I do not dispute that the respondent bears the burden of demonstrating that his case should be reopened. However, ineffective assistance of counsel may form the basis on which the Board will grant a motion to reopen. *Matter of Grijalva*, 21 I&N Dec. 472 (BIA 1996). In general, to establish a claim of ineffective assistance of counsel, a respondent must satisfy the three-pronged screening test articulated in our decision in *Matter of Lozada*, 19 I&N Dec. 637 (BIA), *aff'd*, 857 F.2d 10 (1st Cir. 1988), by showing (1) that he had an agreement with his former attorney to provide representation, and how the attorney failed to meet that agreement; (2) that he notified his former attorney of the allegations of ineffective assistance he is making against him; and (3) that he lodged a complaint against his former attorney with the state disciplinary authority. The respondent has established ineffective assistance of counsel under the Board's *Lozada* test by providing evidence that he had retained counsel and had an agreement for representation, that the agreement was breached, that he confronted prior counsel regarding the breach, and that he filed a complaint with the state bar authorities. *Id.; see also Matter of N-K- and V-S-,* 21 I&N Dec. 879 (BIA 1997).

Moreover, according to the law of the United States Court of Appeals for the Second Circuit, ineffective assistance of counsel may form a basis on which to determine that due process has been violated, even in the absence of a specific *Lozada* claim. *See Rabiu v. INS, supra*, at 883-84 (addressing ineffective assistance of counsel where the respondent's counsel failed to file for relief from deportation); *Esposito v. INS*, 987 F.2d 108, 110-11 (2d Cir. 1993) (addressing ineffective assistance of counsel where counsel failed to file an appeal). The Second Circuit views the breaches of an attorney's obligation to his client that are at issue in these cases as violations implicating the fundamental fairness of the proceedings.

In this case, we have evidence not only that the respondent's counsel let him down by failing to represent him at the hearing on the merits of the removal charges and by failing to take an appeal to the Board, but also that the respondent has complied with our screening standard in *Matter of Lozada, supra.* In any event, even if the respondent is required to demonstrate prejudice, it appears that he has been harmed by his former counsel's conduct or nonfeasance. He lost not only his opportunity to present his defenses and challenges to the charge of deportability, but also the opportunity to argue his legal position on appeal before the Board. *See Rabiu v. INS, supra*, at 883-84.

### B. Ineffective Assistance of Counsel as an Exceptional Situation

The majority bemoans the fact that the respondent raised these points

in the context of an untimely motion to reopen and scolds the respondent for failing even to mention the untimeliness of his motion. But for this unfortunate factor, the majority suggests that it would consider reopening and remanding the case. The majority contends that its point of view is changed by the fact that the respondent delayed in bringing his motion. I must reject such reasoning.

To prevail on a motion to reopen that is untimely, the respondent must demonstrate that his case is one which presents an exceptional situation. *Matter of J-J-, supra*. The respondent has established aspects of his case that clearly compromised its fairness and resulted in his having to resort to this untimely motion. There is no evidence that the respondent's motion is either dilatory or frivolous. To the contrary, it is compelling.

The exceptional situation presented by the respondent is one in which he was unrepresented below. Initially, he was afforded an opportunity to obtain counsel, but then was virtually denied the right to be represented when the Immigration Judge proceeded without even inquiring whether he had counsel. Secondly, he became the victim of ineffective assistance of counsel at his removal hearing and on appeal, when the attorney his family had retained failed to appear and represent him.

### C. Gross Miscarriage of Justice as an Exceptional Situation

In addition, the exceptional situation presented involves a matter of substantive law. The respondent has alleged and argued, complete with legal citation, that, based on the record, he is not removable as charged. Specifically, he has pointed to the Service's reliance on a charge that conflicts with the actual record of conviction in the record before us.

He also has argued that the statute under which he was convicted is a divisible one that, standing alone, cannot support the allegations made by the Service. *See, e.g., Matter of Paulus, supra*. He has shown that, according to the statutory burden assigned to the Service in a removal proceeding involving a lawful permanent resident, he is not subject to removal on the ground of deportability charged by the Service. Section 240(c)(3)(A) of the Act; *see also Matter of Sweetser*, 22 I&N Dec. 709 (BIA 1999) (involving analysis of a divisible statute alleged to include a crime that constitutes an aggravated felony).

As we made clear in *Matter of Mena, supra*, and *Matter of Paulus, supra,* a state controlled substance violation must be for a substance that is included in the federal controlled substance schedules to incur removal consequences. On its face, the state statute under which the respondent was convicted refers to "any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance." Conn. Gen. Stat. Ann. § 21a-277(a) (West 1995). The state statute therefore covers both the broader category of controlled substance offenses and the

specific subcategory of narcotics offenses.

We also have made clear that where a criminal statute includes some offenses that constitute the type of crime included in the immigration provision at issue, and some that do not, we look at the record of conviction to determine the precise nature of the offense of which the respondent was convicted. *See Matter of Short,* 20 I&N Dec. 136 (BIA 1989), and cases cited therein. Here, the record of conviction presented by the Service does not establish that the substance that gave rise to the respondent's conviction is one, such as narcotics, which appears on the federal schedules as well as on the Connecticut schedules. *See Matter of Davis, supra.* In fact, the record of conviction states only that the conviction is for "Poss. with intent to sell" and makes no reference to any type of substance. This is inadequate to sustain the finding that the respondent has been convicted of an offense that qualifies as a controlled substance violation under section 101(a)(43)(B) of the Act.

Nevertheless, the Service persists in claiming that the record of conviction "specifically refers to possession with intent to sell 'narcotics.'" The fallacy of the Service's argument is exposed by documentation and legal argument submitted by the respondent in support of his motion to reopen and request for a stay of removal. Through current counsel, he explains that the additional listings in the Connecticut statute would be rendered surplusage if the more narrow federal listing always trumped the state listing, as the Service urges it does. He emphasizes that, in fact, Connecticut law provides that federal law is deemed to control, except where the state has placed a particular substance not present on the federal schedule in a higher category on the Connecticut list. As an example, he points to the 1989 and 1990 additions to the Connecticut schedules of anabolic steroids and the legislative history related to such enactments, which clearly refers to Connecticut's discretion to expand the state schedule beyond that provided in the federal schedules.

The majority is simply wrong in insisting that the respondent has not claimed that he is not removable, when the respondent has challenged the evidence submitted and the position taken by the Service in these proceedings. The majority is equally wrong in insisting that the respondent must assume the burden of proving that he is not deportable as charged by establishing the substance that formed the basis of his conviction.

I do not read the regulation at 8 C.F.R. § 3.2(a), enabling the Board to reopen or reconsider at any time on its own motion, to obviate the Service's burden in the proceedings below to establish by clear and convincing evidence that the respondent is actually removable as charged. It would be unreasonable to so hold. Proving that he is not deportable is not the respondent's burden in the context of an untimely motion to reopen; his burden is to establish an exceptional situation. *See, e.g., Shahandeh-Pey v. INS,* 831 F.2d 1384 (7th Cir. 1987) (finding no requirement that the respondent pro-

1230

vide proof that his claim would have succeeded on the merits so long as the violation he suffered had the potential to affect the outcome of the hearing).

I conclude that an exercise of the Board's discretion to reopen in an exceptional situation is warranted in the respondent's case. The respondent's removal based on such a defective record, in which the respondent has not been shown to be removable as charged, would constitute a gross miscarriage of justice, and our assertion of jurisdiction over his untimely motion to reopen is warranted.

## III. AVAILABILITY OF RELIEF UNDER
## SECTION 212(c) OF THE ACT

On the record before us, there is every reason to believe that the Service has not met and cannot meet its burden of proving that the respondent is removable as charged based on clear and convincing evidence. On the basis of the conflict between the respondent's admission and the record of conviction alone, I would, at a minimum, remand the case to the Immigration Judge so that the respondent could face the charges against him represented by counsel. However, I also find another reason to remand.

Even assuming that the respondent was convicted of a controlled substance violation that constitutes drug trafficking within the meaning of section 101(a)(43)(B) of the Act, that conviction occurred in 1995, not 1996. The record of conviction makes clear that the guilty plea was entered and guilt was found on October 24, 1995, before the enactment of section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 ("AEDPA"). Only the sentencing took place on July 8, 1996.

I recognize that, arguably, the Attorney General's decision in *Matter of Soriano,* 21 I&N Dec. 516 (BIA 1996; A.G. 1997), controls the question of the respondent's eligibility to apply for a waiver under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994). However, while I am bound by the rules pronounced by the Attorney General, I believe the recent opinions of the Supreme Court, as well as the decisions of the First, Second, Third, Sixth, Eighth, Ninth, and Eleventh Circuit Courts of Appeals and a growing number of federal district courts, rejecting the Attorney General's decision in *Matter of Soriano*, warrant reconsideration of the Attorney General's interpretation of the temporal reach of former section 212(c) of the Act, as amended. *See also Matter of Truong,* 22 I&N Dec. 1090 (Schmidt, dissenting).

In essence, as interpreted by the Attorney General, the 1996 amendments deny an otherwise eligible permanent resident alien the opportunity he would have had before April 24, 1996, to apply for a discretionary waiver of deportability arising from a conviction for an offense classified as an

aggravated felony. *Cf. Landgraf v. USI Film Products,* 511 U.S. 244 (1994). This interpretation of section 440(d) of the AEDPA raises significant issues that involve both principles of statutory interpretation generally and the presumption against the retroactive application of statutes specifically. *See Lindh v. Murphy*, 521 U.S. 320 (1997); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997); *Landgraf v. USI Film Products, supra.*

The Supreme Court construed Congress' silence in the statutory section of AEDPA in question in *Lindh* as "*indicating implicitly* that the amendments [under consideration] were assumed and meant to apply . . . only when those cases had been filed after the date of the Act." *Lindh v. Murphy, supra*, at 327 (emphasis added). As compared to amended sections of the statute in which Congress expressly provided for a retroactive application, the Court concluded that "[n]othing, indeed, but a different intent explains the different treatment." *Id.* at 329; *see also INS v. Cardoza-Fonseca, supra,* at 432 ("'"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 427 U.S. 720, 722 (5th Cir. 1972)))). This construction is equally applicable to the amendment to former section 212(c) of the Act, in light of the fact that Congress made expressly retroactive designations with regard to some provisions that modified the Act, but did not do so with regard to the amendment to former section 212(c) of the Act.

Although the respondent's hearing took place after April 24, 1996, and although it was a removal hearing rather than a deportation hearing, I believe that the respondent may be entitled to have an opportunity to apply for a waiver of deportation under former section 212(c) of the Act. *See Henderson v. INS,* 157 F.3d 106, 129 (2d Cir. 1998) (holding that the amended statute has an impermissibly retroactive effect on pre-April 24, 1996, cases that already had been "initiated before the date of [the AEDPA's] enactment"), *cert. denied sub nom. Reno v. Navas,* 119 S. Ct. 1141 (1999); *see also Mojica v. Reno*, 970 F. Supp. 130, 168-72 (E.D.N.Y. 1997). The recent rulings of the United States District Court for the District of Connecticut in *Dunbar v. INS,* 64 F. Supp. 2d 47 (D. Conn. 1999), and the federal district court decisions in *Pottinger v. Reno*, 51 F. Supp. 2d 349 (E.D.N.Y. 1999), and *Maria v. McElroy*, No. 98 CV 6596 (JBW), 1999 WL 82582 (E.D.N.Y. Oct. 7, 1999), support such a conclusion.

Specifically, in *Pottinger v. Reno, supra*, the United States District Court for the Eastern District of New York followed the Second Circuit's reasoning in *Henderson* and concluded that section 440(d) of the AEDPA did not apply to either the date that deportation proceedings were commenced or the date of the conviction forming the basis for deportability.

Instead, the court reasoned that the operative event was the commission of the crime. Similarly, in *Maria v. McElroy, supra*, a companion case to *Pottinger*, the Eastern District of New York reiterated its holding that section 440(d) does not apply to criminal conduct completed before the enactment of the AEDPA. Applying the *Henderson and Mojica* reasoning, as well as the International Covenant on Civil and Political Rights, G.A. Res. 2200 (XXI), 21 U.N. GAOR, Supp. No. 16, at 52, U.N. Doc. A/6316 (1967) (entered into force Mar. 23, 1976; entered into force for the United States Sept. 8, 1992), the court reasoned that it was impermissible to apply section 440(d) of the AEDPA to offenses committed before its enactment.

The United States District Court for the District of Connecticut, which would have habeas corpus jurisdiction over the respondent's case were he to seek review of our decision, has adopted this reasoning and applied it to an alien in removal proceedings whose commission of a crime occurred prior to the AEDPA's enactment. The court found that the commission of the crime was "the operative event" and reasoned that relief under former section 212(c) "constitutes a legal interest that is important enough for retrospective applications concerns to apply." *Dunbar v. INS, supra*, at 53-54 (citing *Pottinger v. Reno, supra*, at 362). The court went on to note that "the very purpose of the amendments was to change the legal consequences of certain criminal conduct, not the consequences of being convicted of that conduct or having deportation proceedings commenced." *Dunbar v. INS, supra,* at 54.

We need not even go as far back as the date on which the respondent committed the offense. Only recently, the Ninth Circuit recognized specifically that the alteration of the law certainly would "severely disturb [a respondent's] settled expectations [at the time he pled guilty]," that he could apply for a waiver. *Magana-Pizano v. INS*, 200 F.3d 603, at 613 (9th Cir. Dec. 27, 1999) (concluding that the amended version of section 212(c) of the Act may not apply if a respondent relied on access to a waiver in entering a plea of guilty). Thus, a showing of detrimental reliance on access to a waiver under section 212(c) of the Act would make the application of the amended statute retroactive as to such a respondent. *Id.; see also Wallace v. Reno*, 24 F. Supp. 2d 104, 110-11 (D. Mass. 1998), *aff'd*, 194 F.3d 279 (1st Cir. 1999).

The fact that the respondent is in a removal proceeding where the statute no longer provides for a waiver under section 212(c) of the Act, rather than a deportation proceeding under the former version of the statute, does not necessarily extinguish the respondent's vested interest in applying for a waiver under section 212(c) of the Act. Nothing in section 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-597 ("IIRIRA"), repealing former section 212(c) of the Act states that such a repeal is to operate retroactively. *See also* IIRIRA § 309(a), 110 Stat. at 3009-625

(providing that the provisions of Title III-A, of which section 304(b) is part, apply beginning April 1, 1997); *cf.* IIRIRA § 309(c)(1), 110 Stat. at 3009-625 (providing that in the case of an alien who "is in" deportation or exclusion proceedings as of the Title III-A effective date (April 1, 1997), "the amendments made by this subtitle shall not apply").

Congress did not expressly state that there would be no continuing jurisdiction over a respondent's application for a section 212(c) waiver when the respondent is determined to have a vested interest in an opportunity to apply for such relief. Its reformation of vested interests that lodged prior to the effective date of the statute can be accomplished by repeal only if Congress expressly states its intent to achieve such a result. *See Rodrock v. Security Indus. Bank,* 642 F.2d 1193, 1196 (10th Cir. 1981).

Consequently, although an agency's jurisdiction may be lost by the repeal of the statute that granted it, if vested rights have been acquired under the former law, jurisdiction is retained unless Congress dictates otherwise. *See Pentheny v. Government of the Virgin Islands*, 360 F.2d 786, 790 (3d Cir. 1966); *see also Steamship Co. v. Joliffe,* 69 U.S. 450, 458 (1864) (holding that repeal and reenactment "may, therefore, more properly be said to be substituted in the place of, and to continue in force with modifications, the provisions of the original act, rather than to have abrogated and annulled them").

Thus, neither the amendment nor the repeal of former section 212(c) of the Act would have any meaningful bearing on the respondent's reasonable expectation at the time he entered a guilty plea and was convicted of the offense in 1995 that he would have the opportunity to apply for a waiver under section 212(c) as it existed. Imposing such a limitation appears contrary to the thrust of the *Landgraf, Hughes,* and *Lindh* cases decided by the Supreme Court. Accordingly, reexamination of our interpretation of the statute may be appropriate, and the conclusion that the respondent can seek a waiver under former section 212(c) may be warranted. *See Matter of Truong, supra* (Schmidt, dissenting).

## IV. CONCLUSION

The respondent faced a removal hearing before the Immigration Judge without an attorney and was questioned without the advice of counsel. His answers to seemingly straightforward, but actually highly technical, questions are not adequate to meet the Service's burden of proving a lawful permanent resident removable.

Because the respondent was denied representation by competent counsel, the allegations and charges levied by the Service were neither scrutinized nor challenged. The inconsistencies between the allegations lodged by the Service and the documentary evidence submitted by the Service were

not raised or satisfactorily resolved. These inadequacies also were not addressed in the respondent's appeal of right to the Board, and, as a result, this former Marine and father of two who has lived in the United States for 27 years faces a final order of removal.

I do not believe this to be a reasonable or a just result. Consequently, I dissent and would grant the respondent's motion to reopen the proceedings.