NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

MAR 31 2021

FOR THE NINTH CIRCUIT

DANIEL SALVADOR BONETE-LEMA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.   17-72568

Agency No. A088-139-960

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 3, 2020
Submission Vacated March 4, 2020
Resubmitted March 29, 2021
Phoenix, Arizona

Before: HAWKINS, OWENS, and BENNETT, Circuit Judges.

Daniel Bonete-Lema, a native and citizen of Ecuador, petitions this court for

review of the dismissal by the Board of Immigration Appeals (BIA) of his appeal

from the immigration judge's (IJ) denial of his applications for adjustment of status

and relief under the Convention Against Torture (CAT).  We deny the petition.

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Bonete-Lema was first removed from the United States in 2007 under 8 U.S.C. § 1227(a)(2)(A)(iii), which allows for the removal of aliens convicted of aggravated felonies. Bonete-Lema was convicted of "engag[ing] in nonconsensual sexual contact" under Minnesota Statutes § 609.3451(1)(1), but the criminal complaint specially charged that Bonete-Lema had "engaged in nonconsensual sexual contact[] with A.P., a known juvenile female." Under the Immigration and Nationality Act (INA), aggravated felonies include the "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). Aggravated felonies do not include sexual abuse of adults. *Cf. Diego v. Sessions*, 857 F.3d 1005, 1012 (9th Cir. 2017).

Bonete-Lema did not petition for review of the 2007 removal order. But he did unlawfully reenter the United States in 2011 and was convicted of reentry after deportation under 8 U.S.C. § 1326(a). He was then served with a notice to appear. He conceded removability but sought adjustment of status. Although aliens who unlawfully reenter the United States after removal are generally ineligible for adjustment of status, *Carrillo de Palacios v. Holder*, 708 F.3d 1066, 1070 (9th Cir. 2013), Bonete-Lema argued that he was not precluded. He contended that his 2007 removal order was deficient because his Minnesota conviction was not categorically an aggravated felony. Bonete-Lema also sought CAT relief based on attempted robberies and attacks he suffered in Ecuador.

The IJ denied Bonete-Lema's applications for adjustment of status and CAT

relief and ordered him removed. The BIA affirmed, concluding that it lacked jurisdiction over Bonete-Lema's collateral attack on the 2007 removal order and that the record "[did] not establish that it [was] more likely than not that [Bonete-Lema would] be tortured by or at the instigation of or with the consent or acquiescence . . . of a public official or other person acting in an official capacity upon removal to Ecuador."

"When the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (quotation marks and citation omitted). We review the BIA's legal conclusions de novo and its factual determinations for substantial evidence. *Fernandes v. Holder*, 619 F.3d 1069, 1073 (9th Cir. 2010).

If "an alien has reentered the United States illegally after having been removed . . . , the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed," 8 U.S.C. § 1231(a)(5), unless "the petitioner can show that he has suffered a 'gross miscarriage of justice' in the initial deportation proceeding," *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138 (9th Cir. 2008). Usually, such a collateral attack "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). However, we held in *Vega-Anguiano v. Barr*, 982 F.3d 542 (9th Cir. 2019), that we have

3

jurisdiction over a collateral attack filed not within thirty days of the final order of removal, but within thirty days of a second order reinstating the prior removal order under 8 U.S.C. § 1231(a)(5). *Id.* at 545.

Bonete-Lema did not collaterally attack his 2007 removal order in this court until this petition for review—nearly a decade after the thirty-day deadline had run. And unlike *Vega-Anguiano*, the IJ did not reinstate Bonete-Lema's prior order of removal but issued a *second* removal order. But Bonete-Lema urges us to "extend [the] reasoning [of *Vega-Anguiano*] to permit [him] to challenge his prior removal where the agency has refused to reinstate under 8 U.S.C. § 1231(a)(5) and has instead issued a subsequent Notice to Appear." In response, the government argues that "it is clear that *Vega-Anguiano*'s jurisdictional holding is limited to reinstatement" because "the Court based its holding on the unique relationship between a reinstatement order under 8 U.S.C. § 1231(a)(5) and the original removal order, in which a reinstatement gives effect to the previously executed order." (Quotation marks, citation, and alterations omitted). The government explains: "[T]here is no similar bootstrapping between Bonete-Lema's second removal order and his [2007 removal order], as the second order does not give effect to the [2007 removal order] but is entirely independent of it." (Quotation marks omitted).

We choose not to decide this issue today. Rather, we assume without deciding that *Vega-Anguiano* controls here but find that Bonete-Lema fails to show a gross

4

miscarriage of justice.

*Vega-Anguiano* holds that "where an alien has been removed on the basis of a deportation or removal order that lacked a valid legal basis *at the time of its issuance or execution*, a gross miscarriage of justice occurs." *Id.* at 549 (emphasis added). Bonete-Lema argues that his 2007 removal order lacked a valid legal basis because his conviction for "engag[ing] in nonconsensual sexual contact" was not an aggravated felony under the categorical approach, which the INS was required to apply under the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013). *See id.* at 258 ("[W]e hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements."). However, *Descamps* was decided years

after the 2007 removal order,[1] and prior to *Descamps*, the Eighth Circuit[2] applied the modified categorical approach to an indivisible but overinclusive statute like Minnesota Statutes § 609.3451(1)(1). *See, e.g.*, *United States v. Parks*, 620 F.3d 911, 914 (8th Cir. 2010) ("[O]ver-inclusiveness for [purposes of applying the modified categorical approach] may arise even if a criminal statute . . . is not *textually* divisible."), *overruled by United States v. Tucker*, 740 F.3d 1177 (8th Cir.

---

[1] Although *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014), held that intervening Supreme Court precedent can retroactively apply to a collateral attack on an underlying removal order, *id.* at 633, *Aguilera-Rios* does not apply to Bonete-Lema's petition. Like the Supreme Court decision at issue in *Aguilera-Rios*, *Descamps* is a "statutory interpretation decision[]," *id.* at 633, that "do[es] not change the law, but rather explain[s] what the law has always meant," *id.* at 631 (citation omitted); *see Descamps*, 570 U.S. at 260. However, *Aguilera-Rios* was decided in the context of a defendant's criminal proceeding for illegal reentry under § 1326, which provides for collateral attacks on prior removals that were "fundamentally unfair." 769 F.3d at 630. In contrast, Bonete-Lema did not raise his collateral attack in his own § 1326 proceeding, but rather in his removal proceedings, for which the standard is a "gross miscarriage of justice." *Garcia de Rincon*, 539 F.3d at 1138. And as already discussed, a gross miscarriage of justice occurs "where an alien has been removed on the basis of a deportation or removal order that lacked a valid legal basis *at the time of its issuance or execution*"—not at the time of the collateral attack. *Vega-Anguiano*, 982 F.3d at 549 (emphasis added); *see In re Malone*, 11 I. & N. Dec. 730, 731–32 (BIA 1966); *see also United States v. Garza-Sanchez*, 217 F.3d 806, 811 (9th Cir. 2000) ("[B]ecause deportation proceedings are civil in nature, the full panoply of . . . procedural and substantive safeguards which are provided in a criminal proceeding are not required." (alteration in original) (quotation marks and citation omitted)). Therefore, we do not apply *Descamps* retroactively to our "gross miscarriage of justice" inquiry.

[2] The 2007 removal order was issued by the Immigration and Naturalization Service office in Bloomington, Minnesota, which was bound by Eighth Circuit precedent. *In re K-S-*, 20 I. & N. Dec. 715, 719–20 (BIA 1993).

2014) (en banc).

Under the modified categorical approach, it is proper to consider the charging document, *Shepard v. United States*, 544 U.S. 13, 16 (2005), and the charging document for Bonete-Lema's 2007 conviction makes clear that he engaged in nonconsensual sexual contact with a juvenile. The Eighth Circuit did not have a definition for the aggravated felony of "sexual abuse of a minor" in 2007, but the BIA did, defining it as including "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct." *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 995 (BIA 1999) (citation omitted); *see Diaz-Quirazco v. Barr*, 931 F.3d 830, 838 (9th Cir. 2019) (applying *Chevron* deference to the BIA's reasonable interpretation of the INA in the absence of conflicting circuit precedent). Thus, there was a valid legal basis to remove Bonete-Lema in 2007, and the removal order was not a gross miscarriage of justice.

We also conclude that substantial evidence supports the BIA's determination that Bonete-Lema is not more likely than not to face torture upon his removal to Ecuador. Bonete-Lema relies on country conditions reports stating that crime is a severe problem in Ecuador and that police protection in Ecuador is weak, as well as Bonete-Lema's own affidavit describing two incidents in which he was the victim of attempted robberies. This "generalized evidence of violence and crime" in Ecuador is not particular to Bonete-Lema and does not establish his eligibility for

CAT protection. *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010).

Bonete-Lema also fails to establish the state action required for CAT relief. *See*

*Garcia-Milian v. Holder*, 755 F.3d 1026, 1035 (9th Cir. 2014).

**PETITION DENIED.**