# United States Court of Appeals
## For the First Circuit

No. 05-1895

ANTONI A. RUMIERZ,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Regis Fernandez for petitioner.
William C. Minick, Attorney, Office of Immigration Litigation,
U.S. Department of Justice, with whom Peter D. Keisler, Assistant
Attorney General, and Linda S. Werney, Assistant Director, were on
brief, for respondent.

August 3, 2006

**LYNCH**, <u>Circuit Judge</u>.  The BIA held here that an alien, who is already under a final order of removal for committing crimes of moral turpitude, bears the burden of proving that he has met the standards under <u>In re Pickering</u>, 23 I. & N. Dec. 621 (BIA 2003), for vacating an order of removal presented in a belated motion and premised on the post-final-order-of-removal vacating of the underlying state court conviction.  In the circumstances of this case, the BIA held that the alien had not met that burden.  Because we cannot say that either the facts before it or the law compelled the BIA to reach the opposite result, we affirm the BIA and deny the petition for review.

I.

Antoni A. Rumierz, a Polish citizen who entered this country as an immigrant in 1980, was ordered removed from the United States by the BIA on August 18, 2000, on the basis that he had been convicted twice in state courts of receiving stolen property, which are crimes of moral turpitude for federal immigration purposes.  <u>See</u> 8 U.S.C. § 1227(a)(2)(A)(ii).

Before that, in 1999, the BIA had found Rumierz removable on the same basis, but had remanded to the Immigration Judge (IJ) to determine whether Rumierz nonetheless should be granted a waiver of relief under former § 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(c) (1994) (repealed 1996).  The IJ denied § 212(c) relief as a matter of discretion on December 10,

-2-

1999; this decision was affirmed in the BIA's August 2000 order. Deportation proceedings had initially commenced in March 1994.

In its August 2000 order, the BIA expressly found that the government had met its burden to show that the two prior convictions were sufficient to establish Rumierz's deportability; it also noted that the two convictions had not been vacated. There is no doubt the criminal convictions, one of which was a January 1994 Vermont conviction, were qualifying crimes of moral turpitude. Rumierz did not petition for review of the BIA's August 2000 order, nor did he file a motion with the BIA to reopen.

In February 2001, Rumierz filed a pro se writ of habeas corpus, which was heard in the U.S. District Court for the District of New Jersey.[1] No doubt he did this because the ninety-day filing deadline to bring new evidence to the BIA under either a motion to reopen or a motion to reconsider had long since expired. 8 C.F.R. § 3.2(c)(2) (1999) (recodified at 8 C.F.R. § 1003.2(c)(2)).

Thereafter, in 2002, two years after the BIA had entered its final order of removal and the time for reopening had passed, Rumierz sought to vacate the January 1994 predicate conviction in Vermont. On application by Rumierz, a Vermont court entered, on August 23, 2002, an "Agreement and Stipulation," which struck the conviction for possession of stolen property and amended it to

---

[1] According to the government, Rumierz initially filed his habeas petition in Rhode Island, but the petition was transferred to the U.S. District Court in New Jersey.

-3-

negligent operation of a motor vehicle. Negligent operation of a motor vehicle is not a crime of moral turpitude under the immigration laws. Rumierz brought the vacating of the conviction to the attention of the district court. The government responded with an affidavit from a Vermont Deputy State's Attorney, which stated that Rumierz had petitioned for post-conviction relief on the basis of allegations of "certain errors in his earlier conviction." The affidavit also stated that "[t]he merits of Petitioner's claim were not addressed or adjudicated in connection with the 'Agreement and Stipulation.'"

The district court on September 25, 2003, at Rumierz's request, directed the BIA "to reconsider its [August 18, 2000] decision in light of subsequent developments, including the Agreement and Stipulation, dated August 23, 2002 from the Superior Court, Windsor County, Vermont." The district court order did not itself vacate the order of removal or order the BIA either directly or indirectly to vacate the order of removal. It also did not hold that Rumierz had met the standard used by the BIA to determine whether to reopen proceedings.

The BIA, as instructed, reconsidered based on the record sent to it by the district court, and denied relief, saying:

> Upon further consideration, the respondent's appeal will again be dismissed. The August 23, 2002, "Agreement and Stipulation" from the Vermont court states only that [Rumierz's] conviction for possession of stolen property "shall be

-4-

stricken and amended to negligent operation of a motor vehicle."  There is nothing in the record to indicate that this conviction was stricken based on any defect in the original conviction.  An affidavit from a Vermont Deputy State's Attorney states that, "the merits of Petitioner's claim were not addressed or adjudicated" in connection with the Agreement and Stipulation.

In [In re Pickering], we held that where a court order quashing a conviction, and the documents supporting the request to quash, did not identify a basis for questioning the integrity of the underlying criminal proceeding or conviction, the conviction remained valid for immigration purposes.  In that case, the alien's affidavit stated that the conviction was a bar to his lawful permanent resident status in the United States.

We find that, particularly this late in the proceedings (where the conviction in question was entered in January of 1994, and where deportation proceedings began in March of 1994), [Rumierz] must present evidence to show that the Vermont court's action in striking the stolen property conviction was tied to a defect in that conviction, rather than related in part to immigration proceedings. Here, there is no representation in the record regarding any kind of defect in the merits of the respondent's Vermont conviction, and, as noted above, the state's attorney has stated that in striking the conviction, the judge did not address or adjudicate the merits of [Rumierz's] claim. Under these circumstances, the respondent has not shown that the Vermont conviction for possession of stolen property is not still valid for immigration purposes. We therefore find that the respondent remains deportable as charged.

The BIA order had two major components.  First, it utilized the substantive standard the BIA had established in In re

-5-

Pickering, 23 I. & N. Dec. 621, under which a vacated conviction is no longer a "conviction" within the meaning of the immigration laws only "if a court with jurisdiction vacates [the] conviction based on a defect in the underlying criminal proceedings."[2]  Id. at 624. Under Herrera-Inirio v. Gonzales, 208 F.3d 299 (1st Cir. 2000), which pre-dates and is independent of Pickering, the rule is the same:

> The emphasis that Congress placed on the original admission of guilt plainly indicates that a subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying criminal proceedings, does not vitiate that original admission.

Id. at 306.  Second, the BIA held in the circumstances of this case the alien bore the burden of demonstrating that the striking of the state conviction "was tied to a defect in that conviction."

Thereafter, Rumierz renewed his habeas petition in the U.S. District Court in New Jersey.  The case was transferred to this court on petition for review under section 106(c) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 302, 311 (codified at 8 U.S.C. § 1252 note).

---

[2] In Pickering's actual case, the Sixth Circuit affirmed the BIA's rule about vacated convictions, but reversed the BIA's order of removal on the grounds that the government had not met its burden under the specific facts of that case.  Pickering v. Gonzales, -- F.3d --, 2006 WL 1976043 (6th Cir. July 17, 2006). The dicta in Pickering that the court would have come to the same result had the burden been on the defendant is immaterial, as the case is factually distinguishable from this case.

II.

Rumierz makes four arguments attacking the BIA's conclusions. We quote from his brief:

> First, the BIA incorrectly placed the burden of proving deportability on Mr. Rumierz and not on the government where he has been charged with deportability. Second, the stipulated order is entitled to full faith and credit by the BIA without regard to the Vermont Court's reasons for effecting the modification or reduction.[3] Third, even if the BIA can look behind the stipulated order, the government has not met its burden of proving deportability by clear and convincing evidence or that Mr. Rumierz's case runs afoul of [In re Pickering] in that no reliable evidence has been submitted showing that the criminal conviction was vacated solely due to immigration or rehabilitative reasons. Finally, as a matter of procedural due process the BIA should have terminated proceedings with prejudice after one remand to amend the [order to show cause]. (citations omitted).

A.        Burden of Demonstrating Predicate Conviction

The initial question presented by Rumierz's arguments is whether the BIA's allocation of the burden on the alien, in these circumstances, to demonstrate that the Pickering standard has been met is either contrary to the relevant statute or an impermissible construction of the statute. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

---

[3] The second argument has already been rejected by Herrera-Inirio, 208 F.3d at 307 (holding that federal definition of conviction under the immigration laws "does not infract applicable principles of full faith and credit").

The odd procedural posture in which this case came to the BIA -- through a district court order that the BIA reconsider in light of the vacated conviction -- makes no difference to the standard of review we use to determine whether we can reverse the choice of the BIA to place the burden on the petitioner on these facts. Nor does it make a difference to our standard of review of the BIA's ruling that Rumierz had not met his burden.

Rumierz argues that the BIA's allocation of burdens is inconsistent with the statute. He says that under 8 U.S.C. §§ 1101(a)(48)(A) and 1229a(c)(3)(A), the government must always bear the burden of proof on showing a conviction of a crime of moral turpitude, regardless of whether the issue arises in the context of the alien having vacated the conviction after a final order of removal. He also argues that the placing of the burden on him is inconsistent with two Board rulings: Pickering and In re Ortiz Herrera, A30-772-905, 2005 WL 3016102 (BIA Aug. 2, 2005) (unpublished decision). However, Ortiz Herrera has no precedential value,[4] and Pickering does not address the issue of burdens.

---

[4] Ortiz Herrera is also plainly distinguishable. The BIA there found that where a predicate conviction was vacated after removal proceedings had begun, but before a final order of removal has been issued, the government "retain[ed] the burden of going forward to establish removability" and of establishing that the conviction was not vacated due to a defect in the underlying proceedings. Ortiz Herrera, 2005 WL 3016102. Here, by contrast, Rumierz's conviction was vacated by the Vermont court two years after the final order of removability had entered.

The first prong of the <u>Chevron</u> test asks "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842-43. Rumierz relies heavily on the INA section defining the term "conviction":

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where --
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). This section itself does not assign burdens.

But 8 U.S.C. § 1229a provides that the burden of proof is on the DHS of establishing by clear and convincing evidence that, in the case of an alien who has been lawfully admitted to the United States, the alien is deportable.

> In the proceeding, the [DHS] has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

8 U.S.C. § 1229a(c)(3)(A). The BIA found, in both its August 2000 order and its February 2004 order after reconsideration, that the

-9-

government had met its burden in the proceedings leading to the August 2000 removal order. Rumierz does not contest that.

Both statutes, however, are silent on who has the burden of showing the effect of convictions which are vacated or modified after final orders of removal have entered. See Pinho v. Gonzales, 432 F.3d 193, 206 (3d Cir. 2005) (noting that "[n]othing in the statute specifically addresses vacated convictions" and turning to a Chevron analysis). Thus, Congress has not spoken directly to the issue, and the BIA's position cannot be said to be contrary to the statute.

Turning to the second prong of the Chevron analysis, "whether the agency's answer is based on a permissible construction of the statute," 467 U.S. at 842-43, a court must uphold the BIA's interpretation of a silent or ambiguous statute so long as it is reasonable and consistent with the statute. See INS v. Cardoza-Fonseca, 480 U.S. 421, 445 n.29, 447-48 (1987); Estrada Canales v. Gonzales, 437 F.3d 208, 214-15 (1st Cir. 2006). Further, as we noted in Herrera-Inirio, "[b]ecause agency officials acting in the immigration context 'exercise especially sensitive political functions that implicate questions of foreign relations,' deference to administrative expertise is particularly appropriate." 208 F.3d at 304 (internal citation omitted) (quoting INS v. Abudu, 485 U.S. 94, 110 (1988)).

Placing the burden on the alien in these circumstances is consistent with BIA regulations. This allocation of burdens accords with the usual BIA rules that the burden is on the alien show that there is a reason to reopen or to reconsider the case.[5] Even if a prima facie case for relief is shown, the BIA "has discretion to deny a motion to reopen." 8 C.F.R. § 1003.2(a); see also Maryam v. Gonzales, 421 F.3d 60, 62 (1st Cir. 2005).

Most importantly, the placing of the burden on the alien in these circumstances serves the interest of finality. That interest in finality is already reflected in the statutes and the BIA's rules, which both set time limits for motions to reopen and place the burden on the alien seeking to reopen.[6] Abudu, 485 U.S. at 107-08. As the Supreme Court has noted:

> Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and

---

[5] Under the BIA regulations, a petitioner seeking to reopen proceedings must "state the new facts that will be proven at a hearing to be held if the motion is granted" and demonstrate "that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). The BIA may deny a motion to reopen on the grounds that "the movant has not established a prima facie case for the underlying substantive relief sought." Abudu, 485 U.S. at 104.

[6] The BIA was entitled to consider the time limits under its rules for seeking to vacate final orders of removal. "[A] party may file only one motion to reopen deportation or exclusion proceedings (whether before the [BIA] or the [IJ])," and the motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2).

-11-

motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.

INS v. Doherty, 502 U.S. 314, 323 (1992) (internal citation omitted) (citing Abudu, 485 U.S. at 107-08).

The placement of burdens is also consistent with an earlier BIA decision, albeit one the BIA did not cite in the opinion.[7] See In re Beckford, 22 I. & N. Dec. 1216 (BIA 2000) (en banc). The BIA, in In re Beckford, held that when an alien files a motion to reopen (purporting to attack a predicate conviction underlying a removal order), the burden is on the alien to show that the conditions for reopening have been met, even though the

_____

[7] There is no requirement that the BIA, or even a court, explain its reasoning on a motion to reopen or reconsider. See Lasprilla v. Ashcroft, 365 F.3d 98, 100 (1st Cir. 2004) ("We have found nothing in the regulations that requires the BIA to explain its reasons when deciding a motion to reconsider."); FDIC v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000) ("Although a lower court's elucidation of its reasoning invariably eases the appellate task, motions often are decided summarily. . . . [W]e are aware of no authority that would allow us automatically to vary the standard of review depending on whether a district court has taken the time to explain its rationale."). In any event, whether or not the BIA relied on Beckford is not the point. Its placement of the burdens is rational.

Further, no court has ruled against this allocation of burdens. In Cruz-Garza v. Ashcroft, 396 F.3d 1125 (10th Cir. 2005), the court noted its view that where a state court conviction had been modified, the burden was on the government of showing the necessary predicate conviction for removal purposes (that is, an aggravated felony, under 8 U.S.C. § 1227(a)(2)(A)(iii)). See id. at 1130. But the court did so where the conviction was apparently vacated before there was a final order of removal. See id. at 1127-28.

-12-

burden had been on the government initially to show that the alien was removable. Id. at 1218. Where the motion to reopen is untimely, for example, where the state conviction is not vacated until after the time period for filing motions to reopen has expired, then the burden is also on the alien to establish that the motion presents an exceptional situation warranting further review. Id. As Beckford said:

> The current posture of this case is critical to our decision. Were this case now before us on direct appeal, we might be inclined to remand for a further hearing. However, the fact that this is an untimely motion necessarily changes our point of view. A criminal defendant is initially the beneficiary of the rule that the government must prove his guilt beyond a reasonable doubt. However, once having been found guilty, the defendant bears the burden of proof if he wishes to attack that finding. Similarly, the Service initially bears the burden of proof in a removal proceeding, but once an alien is found removable (and that finding is upheld on appeal, if an appeal is taken), the burden shifts to the alien who wishes to attack that finding. We note that, even where a motion to reopen is not untimely, the motion will not be granted unless there is a reasonable likelihood of success upon reopening. This is particularly so when the motion seeking further review of the finding is untimely.

Id. (emphasis added) (internal citations omitted) (citing Taylor v. Illinois, 484 U.S. 400, 414 (1988); INS v. Doherty, 502 U.S. 314 (1992); Abudu, 485 U.S. 94).

Here, the BIA explicitly noted that the vacating of the conviction was "late in the proceedings" and that "the conviction

-13-

in question was entered in January 1994, and . . . the deportation proceedings began in March of 1994."  Further, the BIA noted that Rumierz could easily have sought to vacate the January 1994 Vermont conviction and have presented the vacated conviction to the BIA in the six years before the BIA's 2000 order.[8]  For this reason, as well, the BIA's order is rational.[9]

We outline several other reasons that placing the burden on Rumierz is rational.  A shift of burden from the government to the individual when there is a collateral attack on a final judgment, as here, is quite common in the criminal law.  For instance, the Court has placed the burden of proof on federal habeas petitioners who, under 28 U.S.C. § 2255, seek to vacate an already-imposed federal sentence on the basis that predicate state

---

[8] The fact that Rumierz was proceeding pro se before the BIA by this time makes no difference.  The Vermont conviction had been entered in 1994.  Rumierz had counsel from at least June 1995, when his case was first heard by the IJ, until sometime in 1999.  This gave him nearly four years during which he was represented by counsel to challenge the Vermont conviction.  Indeed, during this time period -- in September 1995 -- Rumierz was able to obtain a state vacatur of another predicate conviction, from Massachusetts (which the DHS then substituted with a different Massachusetts predicate conviction).

[9] The dissent incorrectly says that the only argument the government made in its initial brief supporting the BIA's allocation of the burden was that the alien was in a better position to establish the circumstances of the vacatur; the dissent concludes that all other arguments were waived.  That is neither accurate nor relevant.  Our obligation is to review the BIA's decision itself.

offenses had been vacated.[10]  See Daniels v. United States, 532 U.S. 374, 382 (2001); Custis v. United States, 511 U.S. 485, 496-97 (1994); cf. Taylor, 484 U.S. at 414 (holding that there is a presumption that new evidence, discovered by criminal defendant after trial is over, would not change outcome of trial).

As to this case, in which there are concerns that the alien has not acted with due diligence, the BIA order is also rational by analogy to Johnson v. United States, 544 U.S. 295 (2005), which held that the defendant's failure to act with due diligence in overturning a predicate state conviction underlying sentencing enhancement precluded resort to a renewed limitations period under the federal habeas statute.  See id. at 310-11.

We reject the challenge to the BIA's decision to place to burden of proof on Rumierz.

B.          Whether the BIA Was Compelled to Hold that Rumierz Had Met Pickering Standard

Our standard of review of the substance of the BIA's decision that Rumierz did not meet his burden is quite narrow.  The BIA's "decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law."  8

---

[10] Another analogy is to United States v. Hartsock, 347 F.3d 1 (1st Cir. 2003), which held that where, for purposes of a federal statute criminalizing the possession firearms by those convicted of domestic violence offenses, 18 U.S.C. § 922(g)(9), the statute provided an affirmative defense that a prior conviction would not be considered if there was an unknowing waiver of counsel, the burden of proof for the affirmative defense would be placed on the defendant.  See Hartsock, 347 F.3d at 9.

U.S.C. § 1252(b)(4)(C). Furthermore, the BIA's "administrative findings of fact are conclusive unless any reasonable adjudicator would be <u>compelled</u> to conclude to the contrary." <u>Id.</u> § 1252(b)(4)(B) (emphasis added). "This standard of review as to factual questions is commonly known as the 'substantial evidence test,' and substantial evidence exists where the decision is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" <u>Estrada-Canales</u>, 437 F.3d at 215 (quoting <u>Katebi</u> v. <u>Ashcroft</u>, 396 F.3d 463, 466 (1st Cir. 2005)).

The topic of how to handle vacated state court decisions which are used as predicate convictions for purposes of removal has often come before the BIA and the reviewing courts of appeals. It is well accepted that not every vacating of a state court conviction makes the conviction invalid for purposes of immigration law. As this court held in <u>Herrera-Inirio</u>, 208 F.3d 299:

> The emphasis that Congress placed on the <u>original</u> admission of guilt plainly indicates that a subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying criminal proceedings, does not vitiate that original admission.

<u>Id.</u> at 306; <u>see</u> <u>also</u> <u>Renteria-Gonzalez</u> v. <u>INS</u>, 322 F.3d 804, 812 (5th Cir. 2002); <u>United States</u> v. <u>Campbell</u>, 167 F.3d 94, 98 (2d Cir. 1999); <u>Beltran-Leon</u> v. <u>INS</u>, 134 F.3d 1379, 1380-81 (9th Cir.

-16-

1998).   The rule in this circuit under <u>Herrera-Inirio</u> exists independently of the BIA's <u>Pickering</u> case.

The generic issue arises under a number of sections of the INA.   <u>See,</u> <u>e.g.,</u> <u>Herrera-Inirio</u>, 208 F.3d at 303 (dealing with challenge to conviction of predicate crime of domestic violence); <u>see also</u> 8 U.S.C. § 1227(a)(2)(E)(i).   This case involves only removals based on the commission of multiple crimes of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii).

The BIA has relevant precedent.   Under the <u>Pickering</u> standard:

> [T]here is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships. Thus, if a court with jurisdiction vacates a conviction <u>based on a defect in the underlying criminal proceedings</u>, the respondent no longer has a "conviction" within the meaning of [INA] section 101(a)(48)(A). If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains "convicted" for immigration purposes.

<u>Pickering</u>, 23 I. & N. Dec at 624.   <u>Pickering</u> itself did not address the burden of proof.

The Attorney General, in an 2005 opinion pursuant to 8 C.F.R. § 1003.1(h)(1)(2) (authorizing BIA certification for review by the Attorney General), emphasized that for a vacated conviction to not be a "conviction" within the meaning of the immigration

-17-

laws, the relief provided by the state must "reflect a judgment about the merits of the underlying adjudication of guilt." In re Marroquin-Garcia, 23 I. & N. Dec. 705, 713-17 (A.G. 2005). In addition, the Attorney General noted:

> State laws that authorize the subsequent expungement of a conviction typically do so for reasons that are entirely unrelated to the legal propriety of the underlying judgment of conviction -- reasons, in other words, that are unrelated to concerns about the factual basis for, or the procedural validity of, the conviction. These state expungement laws authorize a conviction to be expunged in order to serve rehabilitative ends and without reference to the merits of the underlying adjudication of guilt. Such expunged convictions would appear, therefore, to survive as formal adjudications of guilt entered by a court.

Id. at 713 (citations omitted).

We outlined Rumierz's four arguments earlier. They are almost entirely dependent on his argument, which we have rejected, that the burden was on the government.

Applying, as we must, the rule in Herrera-Inirio, it is clear that the mere fact that the state court vacated the conviction does not require the BIA to vacate the order of removal, contrary to Rumierz's argument. Also applying Herrera-Inirio and Pickering, it was Rumierz's burden to show that the vacating of the Vermont conviction was based on a procedural or substantive invalidity as defined by Pickering.

-18-

Rumierz's criticisms[11] of the BIA decision, in any event, do not convince us that the BIA was compelled to reach a different conclusion. To support his argument, Rumierz points first to the Vermont state court order (the "Agreement and Stipulation") itself.[12]

---

[11] Rumierz, relying on In re Cota-Vargas, 23 I. & N. Dec. 849 (BIA 2005), argues to us (but had not argued to the BIA) that "the BIA should be precluded from even inquiring into the reasons for the modification of the court's order in this case." This is flatly contrary to both Pickering and Herrera-Inirio, and mixes apples and oranges. The question in Cota-Vargas was whether a state sentencing modification nunc pro tunc meant that the "term of imprisonment" within the meaning of 8 U.S.C. § 1101(a)(48)(B) was now less than that required to allow a conviction to constitute a predicate offense. See 23 I. & N. Dec. at 852. Our issue is different, whether a "conviction" exists within the meaning of 8 U.S.C. § 1101(a)(48)(A). Indeed, the BIA in Cota-Vargas distinguished Pickering on the grounds that it involved subparagraph (A) rather than (B). See 23 I. & N. Dec. at 851-52. Further, it is well settled that "a state court expungement of a conviction is qualitatively different from a state court order to classify an offense or modify a sentence." Garcia-Lopez v. Ashcroft, 334 F.3d 840, 847 (9th Cir. 2003).

[12] Rumierz raises two other arguments for the first time in his reply brief that were not raised to the BIA: First he argues that the BIA was required to follow a lock-step analysis, where it looks first to the order vacating the conviction and, if the order is silent, to the record of post-conviction relief, and if there was any claim of error made, it must treat the conviction as vacated for immigration law purposes. Second, Rumierz argues that the BIA could not review new evidence itself, but was required to remand to the IJ to hear evidence and to engage in fact-finding as to his reasons for seeking reversal. Both arguments are barred by exhaustion doctrine, and are waived in this court. See Boakai v. Gonzales, 447 F.3d 1, 4-5 (1st Cir. 2006); Diva's Inc. v. City of Bangor, 411 F.3d 30, 39 (1st Cir. 2005). Further, for the BIA to remand the matter to the IJ would have been fruitless. There was no dispute before the BIA as to the content of the state court record, and Rumierz already had ample opportunity to provide the exact reasons he gave to the Vermont court for vacating the conviction and had utterly failed to do so.

The BIA's inquiry started with this Vermont court order, which is consistent with how the BIA approached the issue in Pickering. As the BIA noted, all that was docketed in state court was an "Agreement and Stipulation" stating that the conviction for possession for stolen property "shall be stricken and amended to negligent operation of a motor vehicle." On its face, the order fails to show, as required by Pickering, that the prior conviction was vacated because of "a defect in the underlying criminal proceedings." 23 I. & N. Dec at 624. All that the state court order says is that the court had accepted an agreement of the parties to vacate the conviction. The BIA opinion, we note, did not say that it would never terminate an order of removal based on a conviction which had been vacated by stipulation. Nor did it say that the sole factor on which it found Rumierz had not met his burden was that the vacating was based on a stipulation.

To support his claim that the stipulation here was sufficient to invalidate the conviction within the meaning of the immigration laws, Rumierz points to Pinho v. Gonzales, 432 F.3d 193. Pinho does not help him.[13] The question is not whether an

---

[13] Pinho is legally and factually distinguishable on several other fronts. Importantly, the Pinho court, relying on a full record of the state court proceedings, including hearing transcripts, 432 F.3d at 196-97, expressly relied on the fact that Pinho had raised a valid claim of ineffective assistance of counsel, a clear "defect in the underlying criminal proceedings." Id. at 211. Here, by contrast, the BIA had a sparse record consisting only of the state court order and an affidavit from the state attorney, neither of which demonstrate that Rumierz had

-20-

agreement or stipulation vacating a conviction can ever serve as a basis for vacating an order of removal, but whether the BIA was compelled to accept the stipulation here. Pinho does not say that the BIA must accept every stipulation which leads to vacating a conviction, whatever the circumstances.

Rumierz argues that the record, in fact, does show that he had raised a valid claim of a defect in the underlying criminal proceedings, as required by Pickering. Rumierz points to the state attorney's affidavit, which states that Rumierz alleged "certain errors in his earlier conviction."[14] The BIA considered the state attorney's affidavit, but concluded that it was insufficient to meet Rumierz's burden of showing that the conviction was vacated

---

raised a valid claim of any defect. Also, in Pinho there was no statement from a state's attorney that the merits of the petitioner's claim had not been addressed or adjudicated. Furthermore, the alien in Pinho had vacated his state convictions well before the INS had considered the alien's application for adjustment of status (the government in Pinho argued that his state conviction had made the alien ineligible for adjustment of status). Id. at 198. Here, the conviction was vacated after a final order of removal had entered.

[14] This case does not raise the Shepard-type sentencing guidelines issue of what evidence the BIA may look at in determining whether a vacated conviction remains valid for immigration law purposes. See Shepard v. United States, 544 U.S. 13 (2005). The BIA and the courts are free to consider the reasons stated in the stipulated order to amend the state court conviction. See, e.g., Ali v. Ashcroft, 395 F.3d 722, 729 (7th Cir. 2005). And Rumierz does not challenge the BIA's consideration of the state attorney's affidavit; indeed, he relies on it. In the absence of a statutory directive, such as that which exists under the U.S. Sentencing Guidelines, it seems to us that the issue of what the BIA considers, and in what order, is one for the BIA in the first instance, to be tested, if necessary, only under Chevron.

-21-

based on a defect in the underlying proceedings, especially since the affidavit stated that "the merits of [Rumierz's] claim were not addressed or adjudicated in connection with the 'Agreement or Stipulation.'" The BIA concluded that "there is no representation in the record regarding any kind of defect in the merits of the respondent's conviction" and that "[u]nder these circumstances, [Rumierz] has not shown that the Vermont conviction . . . is not still valid for immigration purposes." Again, a court does not review this conclusion de novo, but asks only whether any reasonable adjudicator would compelled to conclude to the contrary.

Going beyond the arguments presented by Rumierz, the dissent's position is that the BIA was <u>compelled</u> to conclude that the vacated conviction in this case -- which had been vacated not after adjudication of the merits of Rumierz's motion to vacate, but pursuant to an agreement and stipulation between the defendant and the state's attorney -- meets the <u>Pickering</u> standard, simply by dint of the fact that Rumierz had claimed "certain errors" through a motion for post-conviction relief in state court.

The BIA was not <u>obligated</u>, as a matter of law, to accept that the stipulation and agreement -- vacating a state law conviction for unstated reasons, entered into long after the state punishment had ceased and after a final order of removal -- was sufficient to render the state conviction invalid within the meaning of <u>Pickering</u> based on evidence that "certain errors" were

alleged.  There is nothing in the federal immigration laws that requires such a result.[15]

First, the BIA is not required to conclude that the mere filing of a petition for post-conviction relief claiming "certain errors" which results in a stipulation means that the petitioner has raised valid claims of defects in the state criminal proceedings.

Second, under Pickering, it is not enough to show that there was an allegation of a cognizable defect in the state proceedings; instead the alien must also show that "a court with jurisdiction vacate[d] the conviction based on a defect in the underlying criminal proceedings."  23 I. & N. Dec. at 624.  Here, even beyond the fact that Rumierz can point to nothing more than the allegation of "certain errors," he cannot show that the

_____

[15] If Rumierz's position were correct, all it would take for an alien to avoid or delay deportation on the basis of old predicate state convictions is to wait until the final order of removal had been entered, make invalid claims for post-conviction relief in state court, find a state attorney who has more pressing matters than defending an old conviction, have the conviction vacated by agreement without having the merits of his claim addressed or adjudicated, and return to the BIA to reopen the case claiming that he had alleged "certain errors," without describing what those errors actually were or providing a record of the state proceedings.  This would either force the government to find a new ground for deportation and start the proceedings over again, or, even worse, allow the alien (who had already been found deportable for having two or more convictions for crimes of moral turpitude) to remain in the country, even though the alien had never demonstrated to anyone that there was even the suggestion of a defect in the state criminal proceedings.  The immigration system was simply not designed to allow this sort of gamesmanship by criminal aliens.

-23-

stipulation was "based on" those errors. A state's attorney, rather than challenging the petition, may have agreed to a stipulated motion to vacate the conviction for any number of reasons other than the strength and validity of those claims.

We address another argument, which Rumierz did not make before the agency (or the district court) or to this court, and so, we hold, is precluded by the exhaustion doctrine and waived. See Boakai v. Gonzales, 447 F.3d 1, 4 (1st Cir. 2006). Nonetheless, we comment on it because it is heavily relied on by the dissent. Nothing in the record of the state court proceedings that was before the BIA -- the "Agreement and Stipulation" or the state attorney's affidavit -- refers to a particular state statute defining the post-conviction procedure used by Rumierz. The dissent nonetheless assumes that Rumierz used the procedure set forth in Vt. Stat. Ann. tit. 13, § 7131, and that this means the grounds stated by Rumierz for relief from the state convictions are necessarily all grounds eligible for Pickering relief. The argument is based on certain assumptions, which Rumierz could have easily supported with evidence, had the assumptions been true. But Rumierz chose not to give the BIA such evidence. By its own terms the Vermont statute, Vt. Stat. Ann. tit. 13, § 7131, only applies to "[a] prisoner who is in custody under sentence of a court and claims the right to be released" because of a defect in the conviction. Id. Rumierz was not in custody in Vermont and had

-24-

served his time.[16]  The fact that Rumierz may have used a particular post-conviction relief statute does not mean that the BIA was required to hold that Rumierz had, in fact, raised valid claims of defects in the underlying criminal proceedings or that the state's attorney agreed to vacate the conviction because of the strength or validity of those claims.

### III.

#### Remaining Claims

Rumierz raises a number of other claims which were never raised to the BIA and are barred by exhaustion doctrine.  Rumierz argues the BIA was obligated to tell him he was eligible for naturalization and so the order or removal should be vacated.  Even if the claim had been exhausted, Rumierz was not eligible because he was already in deportation proceedings and so was precluded from naturalization.  8 U.S.C. § 1429 ("[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding . . . .").  As the DHS notes, there is no inequity.  Rumierz entered the United States as an immigrant in 1980; he had a number of years before the

---

[16]  The dissent asserts that Vermont courts have broadly interpreted its post-conviction relief statute to cover Rumierz's situation.  Whether this is true or not, these were not arguments raised by Rumierz before the BIA or before us.  The BIA was not required to find a state statute that Rumierz may have used to challenge his state conviction, and to conduct its own research into how Vermont courts interpret that statute.

start of his deportation proceedings to seek naturalization but never once did so.

Rumierz also argues that the IJ who initially heard his case was biased. The claim is defaulted because it was never presented to the BIA. We lack jurisdiction. See Ishak v. Gonzales, 422 F.3d 22, 32 (1st Cir. 2005).

Rumierz also argues that because he has spent the last decade in DHS detention, as a general equitable matter he should be released now and permitted to remain in the country. For any number of doctrinal reasons, the argument is not cognizable, but a few words are in order.

At base Rumierz's claim is that when the alien has committed, as he has, more than two crimes involving moral turpitude, all of these crimes should be charged by the DHS in the initial deportation hearings. Here, part of the reason for the ten years of detention is that the government initially relied on a 1989 Massachusetts conviction for breaking and entering (as well as the Vermont conviction) and the IJ found Rumierz deportable. While that decision was on appeal to the BIA, Rumierz succeeded in vacating the Massachusetts conviction. The BIA permitted the DHS, on remand to the IJ, to add a different Massachusetts conviction in

1995 for receiving stolen property.  The IJ again found him deportable in 1996.[17]

Rumierz allowed the various proceedings to run their course and only after the August 2000 BIA final order of removal did he seek to vacate his Vermont conviction in 2002.  The delay is entirely caused by Rumierz.  His case has been ably handled by his counsel.  There is, now, no basis for him to continue to avoid removal.

We <u>deny</u> the petition for review.

**Dissenting Opinion Follows.**

---

[17] Under a 1998 decision of this court, <u>Goncalves</u> v. <u>Reno</u>, 144 F.3d 110 (1st Cir. 1998), the BIA gave Rumierz an opportunity to have his claim for § 212(c) relief adjudicated.  That claim was denied by the IJ on December 10, 1999, and the denial was affirmed by the BIA in its August 18, 2000 order.

**LIPEZ, Circuit Judge, dissenting.**  The majority holds that the BIA properly placed the burden of contesting removability on Rumierz and correctly concluded that he has not met his burden. The majority emphasizes that there is no evidence of the validity of Rumierz's claim of errors in his underlying conviction; that the stipulated vacatur was not the result of an adjudication on the merits of Rumierz's claim of errors; and that there is no evidence that the state's attorney agreed to the stipulated vacatur because of the claim of errors.  I disagree that Rumierz has failed to meet the burden assigned to him by the BIA.  Because I conclude that he met that burden, I would not reach the more difficult issue of whether the BIA properly placed the burden on the petitioner in this case.  Indeed, there is good reason to question whether the majority's analysis of the issue comports with the procedural posture of this case or with the arguments invoked by the BIA and the government in support of the allocation of the burden.  For these reasons, I respectfully dissent.

## A.  Allocation of Burden

Although the majority acknowledges the "odd procedural posture" of this case, ante at 8, it does not acknowledge that this procedural posture undermines its analysis of the allocation of the burden.  In concluding that the BIA properly placed the burden of contesting removability on Rumierz, the majority treats the BIA's decision as the equivalent of a denial of a motion to reopen.  See

<u>ante</u> at 11-13. This is an inaccurate characterization of the BIA's actions. Here, a federal district court remanded the case (initially brought through a habeas petition) to the BIA to "reconsider its last decision in light of subsequent developments, including the Agreement and Stipulation, dated August 23, 2002, from the Superior Court, Windsor County, Vermont."[18] This was not a directive from the court to the BIA to decide <u>whether</u> it should reopen its last decision (which would be the threshold decision that the BIA would have to make if presented with a motion to reopen). Nor did the BIA treat the remand as such. We have explained that "[t]he filing of a motion to reopen with the BIA is not a vehicle for trying an issue, but is merely a request for the opportunity to try it." <u>DaCosta</u> v. <u>Gonzales</u>, 449 F.3d 45, 50 (1st Cir. 2006). If the BIA here had denied an untimely motion to reopen, it would have framed its decision in an entirely different manner, citing the regulations for motions to reopen and explaining why it would not reopen Rumierz's case. Instead, the BIA began its analysis by stating that, "[u]pon further consideration, the respondent's appeal will again be dismissed." It considered the question of removability in light of the vacatur and then concluded

---

[18] While the district court used the term "reconsider," the more apt term under BIA regulations is "reopen" because the remand was based on new evidence, i.e., the Agreement and Stipulation and the state's attorney's affidavit. <u>See</u> 8 C.F.R. § 1003.2(c). The government at oral argument acknowledged that "reopen" was the applicable term.

that Rumierz's conviction was still valid for removal purposes and "therefore . . . the respondent remains deportable as charged. Accordingly, the respondent's appeal will again be dismissed." This language demonstrates that the BIA, as instructed, reopened Rumierz's administrative proceedings but concluded that Rumierz was nonetheless removable.

This distinction is important because the BIA's reopening of a case vacates the final order of removal and reopens the administrative removal proceedings. See id. During administrative removal proceedings, the government has the burden of proving by "clear and convincing evidence" that the petitioner is subject to removal on the basis of his convictions. 8 U.S.C. § 1229a(c)(3)(A); see also Pickering v. Gonzales, -- F.3d --, 2006 WL 1976043, *4 (6th Cir. July 17, 2006) (concluding that, once the petitioner produces evidence that his conviction has been vacated, "the [p]etitioner is deportable only if the government can show, with clear, convincing and unequivocal evidence, that the conviction was vacated solely for immigration reasons"); Cruz-Garcia v. Ashcroft, 396 F.3d 1125, 1130 (10th Cir. 2005) (holding that, in a case where the petitioner obtained post-conviction relief reducing his felony conviction to a misdemeanor, "the evidence of record is legally insufficient to satisfy the INS's stringent burden of proof and, thus, . . . the order for removal must be reversed"); Sandoval v. INS, 240 F.3d 577, 581 (7th Cir.

-30-

2001) ("In order to show that Sandoval's original conviction for possessing more than thirty grams of marijuana remained in effect, the INS could have shown 1) that the Illinois judge exceeded his authority under state law, thus rendering the modification ineffective, or 2) that the sentence modification was legal but not effective for purposes of federal immigration law. We find that the INS did not establish either of these factual situations by clear, unequivocal, and convincing evidence.").[19] If, as I believe the record establishes, the BIA actually reopened Rumierz's case in response to the district court's order, rather than simply adjudicating the case as a request for reopening, the BIA erred in its allocation of the burden of proof.

It would therefore be improper to defer to the agency's error under Chevron. The majority observes that the Immigration and Nationality Act ("INA") is "silent on who has the burden of showing the effect of convictions which are vacated or modified after final orders of removal have entered." Ante at 10.[20] That may

---

[19] In an unpublished decision, the BIA itself has stated that "even where a conviction is vacated after the DHS initiates proceedings and makes a prima facie case with respect to the conviction, the DHS retains the burden of going forward to establish removability." In re Roberto Ortiz-Herrera, 2005 WL 3016102 (BIA Aug. 2, 2005) (affirming IJ's decision that the government failed to meet its burden of demonstrating that vacatur of noncitizen's state court conviction was merely for rehabilitative purposes).

[20] In support of this proposition, the majority cites Pinho v. Gonzales, 432 F.3d 193, 206 (3rd Cir. 2005). However, Pinho did not deal with the BIA's interpretation of the statutory allocation

be true, but if the proceedings were reopened in this case (thus vacating the final order of removal), that observation misses the point. The applicable statutory provision, 8 U.S.C. § 1229a(c)(3)(A), is <u>not</u> silent on who has the burden of showing the effect of a conviction, vacated or not, <u>during</u> administrative removal proceedings. As the plain language of the statute states, and as the aforementioned cases explain, the government has the burden of establishing removability during removal proceedings. Thus, if the BIA reopened Rumierz's administrative removal proceedings but denied his appeal, it misapplied the allocation of burden under 8 U.S.C. § 1229a(c)(3)(A) and there is no basis for applying <u>Chevron</u> deference to its shifting of the burden to the petitioner.

The regulation, cases, and analogies relied upon by the majority to support its contrary view of the case only further undermine its conclusion. None of these regulations, cases, or analogies -- applicable to motions to reopen -- were mentioned in the BIA decision or by the government in its briefs. The BIA never cited 8 C.F.R. § 1003.2, the regulation governing motions to reopen, <u>ante</u> at 11, or <u>In re Beckford</u>, 22 I. & N. Dec. 1216 (BIA 2000), a case in which the BIA rejected an untimely motion to

---

of burden issue in the <u>Chevron</u> context at all. It applied a <u>Chevron</u> analysis to determine whether the BIA's definition of "conviction" in <u>Pickering</u> was entitled to deference, an issue we have already addressed in a previous decision. <u>See Herrera-Inirio</u> v. <u>INS</u>, 208 F.3d 299 (1st Cir. 2000).

-32-

reopen where the petitioner conceded removability, see ante at 12-13. For its part, the government also said nothing of motions to reopen or the standards governing them until oral argument, where it raised for the first time the argument that the BIA treated this case as a motion to reopen. In its brief, the only argument the government raised in support of the BIA's allocation of the burden in this case was that "an alien who obtains a [vacatur] of a state court conviction is clearly in a better position tha[n] DHS personnel to have access to documentation regarding the circumstances of the vacatur." The weakness of this argument as a justification for burden shifting is readily apparent,[21] which is perhaps why the majority opinion does not even mention it. In any event, the arguments upon which the majority relies are not the arguments expressed in the BIA decision nor arguments raised in the government's brief.

We have said many times that "[w]e must judge the action of an administrative agency based only on the reasoning provided by the agency, not based on substitute grounds we construct ourselves to salvage the agency's action." Ymeri v. Ashcroft, 387 F.3d 12, 17 (1st Cir. 2004). Furthermore, "[w]e have consistently held that, except in extraordinary circumstances, arguments not raised

---

[21] Such reasoning would hold whenever a person obtains a vacatur of his criminal conviction, regardless of the timing of the vacatur. Yet, at least during removal proceedings, the government still retains the burden of establishing removability even when a petitioner obtained a vacatur of an underlying conviction after proceedings have commenced. See supra Part A.

in a party's initial brief and instead raised for the first time at oral argument are considered waived." United States v. Pizarro-Berrios, 448 F.3d 1, 5 (1st Cir. 2006); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Here, the majority both constructs new grounds to salvage the BIA's action and, in so doing, relies on arguments not raised in the government's brief.

This unorthodox approach is apparently necessary to defend a BIA decision that cannot be defended on its own terms.[22]

---

[22] Because of the procedural oddity of this case -- on remand from the district court -- Rumierz may have received a renewed review of his administrative appeal that the BIA might not otherwise have been inclined to grant him. Certainly, if Rumierz had not obtained a remand from the district court on habeas, he could have instead filed a motion to reopen directly with the BIA, which, though untimely, the BIA could have granted sua sponte. See 8 C.F.R. § 1003.2(a). But, as the majority points out, the BIA grants such motions only in extraordinary cases. Therefore, it was beneficial for Rumierz that the district court remanded this case to the BIA.

This procedural oddity only underscores why this case is a poor vehicle for announcing the majority's broad rule on the reallocation of the burden of proof when a petitioner seeks to reopen his case on the basis of a vacated conviction. Perhaps the BIA in this case should have sought clarification from the district court on the scope of the remand. Perhaps the BIA should have treated the remanded case as an untimely motion to reopen and proceeding accordingly. But it did neither of those things. Instead, as explained in its description of its decision, it reopened the administrative proceedings, considered the new evidence, decided the question of removability, and then dismissed Rumierz's administrative appeal. While it may have been preferable, in the majority's view, for the BIA to have treated this case differently, it is not appropriate for the majority to write a decision that it wishes the BIA had written or to make arguments that it wishes the government had presented in defending the agency's action.

From my reading of the BIA's decision, the BIA reopened but ultimately denied Rumierz's administrative appeal. In so doing, the BIA erred in allocating the burden to Rumierz under 8 U.S.C. § 1229a(c)(3)(A). In any event, the majority's decision to reframe the BIA's decision and supply new reasoning aside, we did not have to reach this difficult issue here. As I describe in further detail below, I conclude that Rumierz has met the burden allocated to him by the BIA.

## B. Rumierz's Vacatur

The BIA stated that Rumierz "must present evidence to show that the Vermont court's action in striking the stolen property conviction was tied to a defect in that conviction, rather than related in part to immigration proceedings." Although the record evidence here is sparse,[23] it includes (1) an "Agreement and Stipulation" that the conviction for possession of stolen property "shall be stricken and amended to negligent operation of a motor vehicle" and (2) an affidavit of Deputy State's Attorney Matthew Huntington regarding the Agreement and Stipulation that states that Rumierz raised "errors in his earlier conviction in Windsor District Court, Vermont" through a "Petition for Post-Conviction Relief." Without acknowledging the affidavit's reference to Rumierz's claims of errors in his conviction, the BIA stated that

---

[23] Rumierz, who has been detained since 1994, was pro se at the time of the BIA's consideration of his vacatur.

"there is no representation in the record regarding any kind of defect in the merits of the respondent's Vermont conviction, and . . . the state's attorney has stated that in striking the conviction, the judge did not address or adjudicate the merits of the respondent's claim." For these reasons alone, the BIA concluded that Rumierz failed to meet his burden.

In affirming the BIA's decision, the majority again bases its reasoning on grounds not relied upon by the BIA or raised in the brief of the government. Specifically, the majority acknowledges the affidavit's reference to Rumierz's claims of errors in his conviction, but asserts that there is no evidence that Rumierz raised "valid claims of defects" in his criminal proceedings and that the state's attorney, in agreeing to the stipulated motion, may have done so "for any number of reasons other than the strength and validity of those claims," ante at 23-24. For these reasons, the majority holds that the record does not compel the BIA to conclude that Rumierz has failed to meet his burden.

The majority's decision reflects the erroneous notion that a vacatur must follow an adjudication on the merits of claimed legal errors or some further inquiry regarding the validity of the claims and any hidden reasons behind the government's agreement to the stipulation. Such requirements are a misapplication of In re Pickering, 23 I. & N. Dec. 621 (BIA 2003). The proper approach in

-36-

this case is to examine whether Rumierz has provided evidence that the stipulated order was based on defects in his underlying conviction, rather than grounds proscribed by Pickering. Following this approach, I conclude that the BIA was compelled to find that Rumierz met the burden allocated to him.

## 1. Vacatur by stipulation

In Pickering, the BIA explained that "if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a 'conviction' [for immigration purposes]. If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains 'convicted' for immigration purposes." 23 I. & N. Dec. at 624; see also Herrera-Inirio v. INS, 208 F.3d 299, 306 (1st Cir. 2000) ("[A] subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying criminal proceedings, does not vitiate that original admission [of guilt]."). Nothing in Pickering precludes a stipulated vacatur from invalidating a conviction as a ground for removal or for other immigration purposes, provided that the vacatur is still based on a defect in the underlying conviction rather than rehabilitative or otherwise proscribed grounds. See Pinho v. Gonzales, 432 F.3d 193 (3rd Cir. 2005) (holding that the petitioner's vacatur, obtained by settlement rather than

-37-

adjudication, meets the Pickering standard because the petitioner claimed a defect in his underlying conviction); Cruz-Garcia v. Ashcroft, 396 F.3d at 1131 (explaining that if "a substantive challenge to and/or showing of the inappropriateness of the felony conviction prodded the State into stipulating to a vacatur of the conviction and its replacement by a misdemeanor," then "[o]n this scenario, petitioner's vacated felony conviction would not satisfy the test for removal").

The majority acknowledges that some stipulated vacaturs might suffice to meet the Pickering standard and that, in this case, the BIA did not deny Rumierz's appeal based solely on the fact that his vacatur was obtained by stipulation. Yet, in affirming the decision of the BIA, the majority emphasizes several factors that are characteristic of stipulations -- i.e., that the merits of Rumierz's claims of error had not been addressed or adjudicated by the judge in ordering the stipulated vacatur; that one cannot assume that Rumierz raised "valid" claims of defect; and that the state's attorney may have agreed to the stipulation for a variety of reasons not indicated on the record. Ante at 20 n.13, 23-24. In holding that Rumierz's vacatur cannot meet the Pickering standard based on these factors, the majority effectively creates a bar that applies to many vacaturs obtained by stipulation or settlement. As the Third Circuit's recent decision in Pinho explains, such a bar would be inappropriate, and the factors relied

-38-

upon by the majority here are simply not dispositive in a proper Pickering analysis.

Pinho, like the case here, involved a petitioner who had sought and obtained a vacatur of an earlier conviction through a settlement with the government rather than a trial. Specifically, the petitioner in Pinho had pled guilty to a drug crime, and later applied for post-conviction relief based on his claim that he had received ineffective assistance of counsel in connection with his rejection from a special alternative sentencing program (termed "PTI placement") that would have allowed him to earn a dismissal of charges without having to plead guilty. See Pinho, 432 F.3d at 196. The government settled, and an order was issued dismissing the charges against him and, according to the parties, his conviction was vacated. See id. at 196-97. Pinho later applied for adjustment of his immigration status, but was denied on the basis of his old drug conviction. See id. at 197. In response to his filing of a complaint in district court, the court held that his vacated conviction was still a conviction for immigration purposes. See id. at 199.

The Third Circuit reversed. It found the BIA's longstanding distinction between "rehabilitative vacaturs" (vacating a conviction for rehabilitative or immigration-related purposes) and "substantive vacaturs" (vacating a conviction on the basis of a legal defect in the proceedings) to be reasonable. See id. at

-39-

209-10. However, the Third Circuit concluded that, under Pickering, a vacatur need not follow a formal adjudication on the merits in order to be a substantive vacatur:

> The fact that the parties agreed to settle rather than proceed to trial on the ineffective assistance claim should not be dispositive. Indeed, it may be that the likelihood that the prosecution will agree to a settlement such as PTI placement will increase proportionally with the strength of the alien's constitutional claim. If the BIA in Pickering had meant to require an adjudication of the merits of aliens' claims of substantive defects in the original conviction in order to make out an adequate "basis," it could have said so. But it did not. It has instead drawn its line between vacaturs "based on" underlying defects and vacaturs granted "for reasons" not related to underlying defects, and it is readily apparent that the set of vacaturs "based on" underlying defects is not necessarily coextensive with the set of vacaturs based on adjudications of underlying defects. We must therefore inquire as to the reasons underlying the vacatur order, and it would obviously be begging the question simply to invoke the PTI acceptance yet again. The prosecutor's offer of PTI placement did not spring into being ex nihilo; rather, it was by way of settlement of Pinho's collateral attack on the constitutional validity of his conviction. The relevant "reason," then, for our Pickering analysis, is plainly the reason for the settlement agreement.

Id. at 211. In so holding, the court also rejected the government's argument that it should look beyond the record to consider any hidden reasons the state's attorney might have for agreeing to the stipulated vacatur:

> At oral argument the government contended that the motives of state prosecutors and judges might change over time and might not be reflected in the record. Perhaps a new prosecutor, reviewing old cases, might decide that some of his predecessor's policies had been unduly harsh. Perhaps such a prosecutor, when presented with a post-conviction relief claim brought by a defendant who had been denied entry into a pre-trial diversion program years earlier because of a now-discredited policy, might decide to "do the right thing," and help that defendant avoid the immigration consequences of his guilty plea. Perhaps a state judge, looking at the case, would see a hard-working family man threatened with deportation based on a relatively minor crime committed a decade earlier, and decide to help that hard-working family man get around the federal immigration laws. Perhaps, perhaps. We present this hypothetical to highlight the fact that it is precisely that: a hypothetical proposed by the government about possible motives of state actors nowhere found in the record. . . . We cannot endorse a test which requires speculation about, or scrutiny of, the reasons for judges' actions other than those reasons that appear on the record.

Pinho, 432 F.3d at 211. Thus, the only relevant question under Pickering is whether the record itself establishes that the reason for the stipulated order was based on a defect in the conviction, and not rehabilitative or immigration-related grounds. See id. Applying this inquiry to the record in Pinho, the Third Circuit noted that Pinho "raised only one claim: ineffective assistance of counsel . . . . The only basis for the vacatur appearing in the order or the pleadings is Pinho's ineffective assistance claim. . . . [T]herefore, Pinho's conviction was vacated 'based on a defect

-41-

in the underlying criminal proceedings' and Pinho accordingly 'no longer has a 'conviction' within the meaning of [the INA].'" Id. at 215.

The persuasive analysis of the Third Circuit in Pinho undermines each of the factors relied upon by the majority in explaining why Rumierz's vacatur could not meet the Pickering test. Indeed, the majority's attempt to distinguish Pinho, ante at 20 n.13, only further illustrates why Pinho supports Rumierz's case. First, the majority asserts that the Pinho court had the benefit of full state court transcripts that demonstrated that Pinho raised a "valid" claim of ineffective assistance of counsel. Yet nowhere in the Pinho decision did the Third Circuit state that its holding was based on a finding that his underlying claim of error was valid or meritorious. Nor would it have been appropriate for the court to make such a judgement of validity. The concern in Pickering is solely whether the claims serving as the basis of a vacatur are related to defects in the conviction, rather than requests for equitable or rehabilitative relief. Nothing in Pickering permits the BIA or a reviewing court to re-assess the validity or strength of the claims that led to a vacatur. Cf. Pickering, 23 I. & N. Dec. at 624 (explaining that the BIA will "not look behind the state court judgment to ascertain whether the court acted in accordance with its own law in vacating the conviction"); see also Pinho, 432 F.3d at 211 (refusing to scrutinize further the

decisions of prosecutors or judges when the only basis for the vacatur stated in the record was a claim of a defect in the conviction). Thus, while the Pinho court certainly had the benefit of a more extensive record than we have here, the decision in Pinho rested on the court's assessment of the type of claim raised by the petitioner, not its validity. See Pinho, 432 F.3d at 215. Here, as in Pinho, the record shows that Rumierz's petition for post-conviction relief was based on errors in his conviction, not Pickering-proscribed grounds.

Second, the majority distinguishes Pinho by noting that here we have a statement from the State's Attorney that Rumierz's claims were not addressed or adjudicated by the state court. This distinction is a non-starter. The Pinho decision also noted that the state court in that case never reached the merits of Pinho's claim of error in his state court conviction and that requiring an adjudication of those claims would be contrary to Pickering. See id. at 211 ("If the BIA in Pickering had meant to require an adjudication of the merits of aliens' claims of substantive defects in the original conviction in order to make out an adequate 'basis,' it could have said so. But it did not."). Thus, there is no difference between the stipulation here and the settlement in Pinho in terms of whether the state court addressed and adjudicated the underlying claims of error.

Third, the majority notes that Pinho obtained a vacatur of his conviction before the agency had to take action in his case, whereas Rumierz obtained a vacatur after a final order of removal was reached in his case. This distinction is inapposite for two reasons. First, as I have explained above, the BIA effectively reopened Rumierz's case, thus vacating the final order of removal. Second, even assuming that the final order of removal remained in place, the fact that Rumierz obtained a vacatur after the order tells us nothing about whether the record evidence shows that the vacatur meets the Pickering standard. This argument relates to the majority's burden allocation analysis, not the Pickering analysis. Here, as in Pinho, the record evidence shows that the stipulated vacatur meets the Pickering standard, even assuming arguendo that Rumierz has the burden.

Thus, as the Third Circuit's reasoning in Pinho demonstrates, the factors relied upon by the majority here -- the lack of an adjudication on the merits, uncertainty over the validity of the petitioner's claims of error in his conviction, and the possibility that the State's Attorney was motivated by factors not disclosed on the record -- are all inappropriate grounds for deciding that the BIA was not compelled to conclude that the vacatur presented by Rumierz met the Pickering standard. Pursuant to a proper analysis, the record compels a finding that Rumierz has met the burden allocated to him by the BIA.

## 2. Whether the vacatur meets the **Pickering** standard

In order to determine whether a vacatur is tied to a defect in the underlying conviction, rather than rehabilitative or immigration-related purposes, the BIA starts by examining the order itself. See Pickering, 23 I. & N. Dec. at 624. Often, the statutory basis for the order will resolve whether the underlying conviction remains valid for immigration purposes. Compare Matter of Adamiak, 23 I. & N. Dec. 878 (BIA 2006) (holding that a conviction vacated under Ohio Revised Code § 2943.031 for the trial court's failure to advise the alien defendant of the possible immigration consequences of a guilty plea is no longer a valid conviction for immigration purposes) and Matter of Rodriguez-Ruiz, 22 I. & N. Dec. 1378, 1379-80 (BIA 2000) (holding that a conviction vacated pursuant to Article 440 of the New York Criminal Procedure Law, which is neither an expungement statute nor a rehabilitative statute, did not constitute a conviction for immigration purposes) with Matter of Roldan, 22 I. & N. Dec. 512 (BIA 1999) (holding that a conviction vacated by operation of a state rehabilitative statute still constitutes a conviction for immigration purposes).

Where the order does not specify its statutory basis, the BIA will consider the grounds presented to the court by the petitioner in his or her motion to vacate the conviction. See Pickering, 23 I. & N. Dec. at 624 ("The resolution of this case . . . turns on whether the conviction was quashed on the basis of a

defect in the underlying criminal proceedings.  In making this determination, we look to the law under which the [] court issued its order and the terms of the order itself, as well as the reasons presented by the respondent in requesting that the court vacate the conviction." (footnote omitted)); see also Pinho, 432 F.3d at 215 ("To determine the basis for a vacatur order, the agency must look first to the order itself.  If the order explains the court's reasons for vacating the conviction, the agency's inquiry must end there.  If the order does not give a clear statement of reasons, the agency may look to the record before the court when the order was issued.  No other evidence of reasons may be considered.").

As mentioned above, the BIA will "not look behind the state court judgment to ascertain whether the court acted in accordance with its own law in vacating the conviction." Pickering, 23 I. & N. Dec. at 624.  Thus, if the record shows that a state court vacated a conviction through a statutory mechanism for addressing defects in the underlying conviction, the BIA will not consider any suggestions by the government that the state court was actually motivated by a desire to ameliorate the deportation consequences rather than correct the defect.  See id.; Matter of Rodriguez-Ruiz, 22 I. & N. Dec. 1378, 1379-80 (BIA 2000); see also Pickering, -- F.3d at --; 2006 WL 1976043, at *4 n.3 ("When a court acts pursuant to a law that allows it to act based only on the merits of the underlying position, it is presumed not to have acted

contrary to that law, solely to enable the [p]etitioner to avoid adverse immigration consequences.").

In Rumierz's case, the order striking and amending his conviction does not specify the statutory basis for the vacatur or the nature of his claims for relief.  However, the Deputy State's Attorney's affidavit does explain that Rumierz filed a "Petition for Post-Conviction Relief" in which he "alleged certain errors in his earlier conviction in Windsor District Court, Vermont."  The affidavit does not state that Rumierz sought expungement through a rehabilitative statute or that he claimed relief on immigration-related grounds.  The only reference in the affidavit is to errors in his conviction, alleged in his motion for post-conviction relief.  While there is no statutory citation specified in the affidavit, Vermont's post-conviction relief statute specifies that relief is only available through that statutory mechanism on "the ground that the sentence was imposed in violation of the constitution or laws of the United States, or of the state of Vermont, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 13 V.S.A. § 7131.[24]

---

[24] The majority suggests that Rumierz might not have been able to avail himself of Vermont's post-conviction relief because he was no longer in custody in Vermont and had served his time for his conviction.  The notion that Rumierz, detained for ten years pending removal due in part to this conviction for possession of stolen property, could not properly file a motion for post-

The BIA did not refer to these aspects of the affidavit, stating instead that "there is no representation in the record regarding any kind of defects" in Rumierz's conviction. Given that the <u>only</u> representation in the record is that Rumierz sought and obtained a vacatur after alleging errors in his conviction, the BIA's reasoning is patently erroneous. The record here compels the conclusion that the vacatur in this case meets the <u>Pickering</u> standard.[25] By contrast, there is simply no indication that Rumierz sought or could have been granted post-conviction relief based on the grounds proscribed by the BIA in <u>Pickering</u>.[26] For these

conviction relief under the Vermont statute is plainly contrary to Vermont law. <u>See</u> <u>In re Stewart</u>, 438 A.2d 1106 (Vt. 1981).

[25] While I appreciate the majority's concern that some petitioners may seek to avoid or delay deportation by taking advantage of overburdened state attorneys, <u>ante</u> at 23 n.15, I disagree that these policy concerns are implicated here. Rumierz, pro-se at the time of the BIA proceedings, is relying not on his own unsubstantiated claims that he alleged errors in his conviction, but on the sworn statement of the State's Attorney in his case. To be sure, this case would have been much easier if Rumierz had supplied the BIA with his post-conviction relief petition, but given the State's Attorney's acknowledgment that his petition was based on "errors in his earlier conviction," I would not characterize these actions as "gamesmanship" on his part.

[26] The Sixth Circuit's recent decision in <u>Pickering</u> is particularly on point here. <u>See</u> <u>Pickering</u>, -- F.3d --; 2006 WL 1976043. In that case, the court vacated the decision of the BIA, noting that its "conclusion that [the court that vacated Pickering's conviction] acted solely for immigration reasons can only be reached by inference" and that inference was contrary to the record. <u>Id.</u> at *5. Although the Sixth Circuit held that the government had the burden of establishing removability, it noted that even if the burden were with the petitioner, he met it. <u>Id.</u> at * 4 n.3. Specifically, the court observed that "[t]he only legal authority cited anywhere in the record of [the court that vacated his conviction] allows it to act only to redress violations

reasons, I would vacate the BIA's decision and remand for termination of the removal proceedings, without reaching the question of whether the allocation of the burden in this case was proper.

---

of the [p]etitioner's rights." Id. Thus, in order to have found that the petitioner was removable on this record, the BIA must have "assumed that [the court] ignored the legal basis the Petitioner articulated for seeking to have his conviction quashed." Id. at *3. The Sixth Circuit thus vacated the decision, holding that the record compelled the BIA to conclude that the petitioner's conviction was not vacated solely for rehabilitative or immigration-related reasons. Id. at *5. Here, too, the only references in the record regarding the basis of Rumierz's vacatur are to his claims of "errors in his earlier conviction" and his "Petition for Post-Conviction Relief." The inference that Rumierz's conviction was vacated by stipulation for rehabilitative or immigration-related purposes is flatly contrary to the record.